7408

### MAGILL v. SEABOARD AIR LINE RY.

1. CARRIER—PASSENGER.—Under the law of Georgia a carrier may eject a passenger who is so drunk as likely to substantially annoy or disgust other passengers of normal sensibilities or to reasonably cause apprehension of danger or injury to other passengers.

2. CHARGE—DAMAGES—PUNITIVE.—If the law is otherwise correctly charged the Court is not bound to give a specific request. Here it is held the Court correctly instructed the jury as to the law of Georgia in reference to punitive damages and as to actual damages and measure of damages.

3. CARRIER—EVIDENCE.—In this case it was error to rule out statement of servant that he had made a public announcement on an outgoing excursion train that no drinking would be allowed on the return trip.

Before GAGE, J., Abbeville, April term, 1908. Reversed.

Action by Benjamin L. Magill against Seabord Air Line Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Glenn & McFadden* and *W. P. Green,* for appellant.

*Mr. Green* cites: *Objectionable to passengers:* 57 S. E. R., 744; 2 P. L. R. A. (N. S.), 472; 56 S. E., 70; 26 Am. R., 68. *Punitive damages:* 2 L. R. A. (N. S.), 472.

*Mr. Glenn* cites: *If conductor exercise duty of vigilance with discretion carrier is not liable:* 56 S. E., 68; 57 S. E., 943; 93 Mass., 304. *Punitive damages:* 45 S. E., 1000; 12 S. E., 1061. *Distinction between actual and punitive damages in charge not clear:* 48 S. E., 232; 37 S. E., 161; 22 S. E., 613; 29 S. E., 309; 30 S. E., 362; 32 S. E., 80.

*Messrs. D. H. Magill* and *Wm. N. Graydon,* contra. *Mr. Magill* cites: *Announcement on the train properly ruled out:* 4 Ency., 104, 105; 36 N. Y., 477. *Evidence not responsive to allegation is inadmissible:* 69 S. C., 360; 68 S. C., 89.

*Mr. Graydon* cites: *Announcement on cars properly ruled out:* 16 Cyc., 1200, 1206; 42 S. E., 364. *Law of Georgia applicable to this case:* Secs. 3906, 3907, Code of Ga.; 124 Ga., 357; 99 Ga., 266.

December 29, 1909. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This action was brought to recover actual and punitive damages for an alleged unlawfull ejection of plaintiff from defendant's passenger train at Athens, Georgia, and resulted in a judgment for two thousand dollars in favor of plaintiff.

The evidence tended to show that on September 3, 1906, plaintiff purchased a ticket from Abbeville, S. C., to Atlanta, Georgia, and return as passenger on defendant's excursion train between these points. Upon the return trip on night of the 4th there was much disorder on the train and the conductor caused several men to be arrested and taken from the train at Athens, Ga., and among them was the plaintiff.

Plaintiff was placed in the guard house that night and next morning was tried before the mayor of Athens, found guilty of the charge of being drunk, was fined $5.00 and discharged upon payment. He thereafter purchased ticket from Athens to Abbeville for $1.75 and returned home on defendant's train.

Plaintiff testified that after leaving Atlanta he had taken two drinks on the train, leaning over so that he thought he could not be seen, that he was "under the influence of whiskey," but was not drunk and had his senses, that he had not been guilty of any disorderly conduct and was sitting in his seat asleep when arrested. There was evidence that flagrant acts of disorder occurred on another coach than that in which plaintiff was riding, and that after certain arrests in that coach, Newman, acting as conductor, directed the officers to arrest plaintiff and two others, Gladdis and Hawthorne, in the same coach with plaintiff. There was some evidence that Hawthorne and plaintiff occupied the same seat and the plaintiff had been "nursing" Hawthorne, who was stretched out with his feet in the aisle. The testimony for defendant tended to show that all three were drunk. There was no evidence tending to connect plaintiff with the flagrant disorder which caused the conductor to call upon the police officers of Athens, and there was much evidence that plaintiff had not been guilty of any improper conduct except such as might be inferred from the fact of taking two drinks of whiskey on the train and being "under the influence of liquor" or "drunk" on the train.

As the wrongs of which plaintiff complained occurred in Georgia, defendant's liability is to be solved by the laws of Georgia. The main question in the appeal is whether the Court correctly instructed the jury as to the law of Georgia. The following statutes of Georgia introduced in evidence by defendant were read to the jury for their guidance:

Code of Georgia, Volume 2 (Civil Code), Section 2296: "Carriers of passengers may refuse to admit, or may eject

from their conveyances all persons refusing to comply with reasonable regulations, or guilty of improper conduct, or of bad, dissolute, doubtful, or suspicious characters; so they may refuse to convey persons seeking to interfere with their own business or interest."

Volume 3 (Penal Code), Section 902: "Police of railroads. The conductors of a train carrying passengers are invested with all the powers, duties and responsibilities of police officers while on duty on their trains: *Provided,* Nothing herein contained shall affect the liability of any railroad company for the acts of its employes. When a passenger is guilty of disorderly conduct, or uses any obscene, profane or vulgar language, or plays any game of cards or other game of chance for money or other thing of value upon any passenger train, the conductor of the train may stop it at the place where such offense is committed, or at the next stopping place of the train, and eject the passenger from the train, using only such force as may be necessary to accomplish the removal, and the conductor may command the assistance of the employees of the company and of the passengers on the train to assist in the removal; and the conductor may cause any person violating the provisions of this section or the laws of this State to be determined and delivered to the proper authorities for trial as soon as practicable."

At the plaintiff's request the Court charged:

IV. "That even if the jury should find from the testimony that the plaintiff was under the influence of whiskey, that would not be sufficient excuse, under the law of Georgia, for the defendant to eject the plaintiff from the train, unless the plaintiff was guilty of some misbehavior or was violating some law of the State of Georgia."

We do not think this charge harmonizes with the law of Georgia. The charge implies that a carrier may not eject a passenger from its train unless in addition to being drunk

the passenger is guilty of some act of misbehavior or some
act in violation of law.

The charge does not distinguish between slight intoxica-
tion such as would not seriously effect the conduct of the
passengers and drunkenness such as is likely to annoy, dis-
gust or endanger other passengers.

We understand the law of Georgia on this subject to be as
declared in *Hillman* v. *Georgia R. & B. Co.*, 56 S. E. Rep.,
70, which quotes with approval from *Pittsburg etc. R. R.
Co.* v. *Vandyne,* 57 Ind., 579, 26 Am. Rep., 68, declaring that
"a person so drunk as to be likely to violate the common
proprieties, civilities and decencies of life has no right to a
passage while in that condition. The comfort and con-
venience of passengers must be protected, their opinions
and feelings regarded and proper decorum observed, and
although in a railroad passenger car, neither the highest
breeding of the drawing rooms, nor the fastidious delicacy·
of the parlor, is required, yet the behavior of all persons
therein should be becoming to the place and general char-
acter of the passengers." The Court quoted further from
this Indiana case: "A railroad company may refuse to
receive and carry as a passenger any person who is so
intoxicated as to be disgusting, offensive, disagreeable, or
annoying, as long as he continues in that condition though
he may have purchased a ticket entitling him to passage.
Slight intoxication, such as would not seriously affect the
conduct of the passenger, will not justify a railroad com-
pany in refusing to receive and carry him." The Georgia
Court adds this qualification: "Of course, mere trivial
annoyance or such as would not arise to a reasonable person,
but only to the supersensitive or fastidious, would not fall
within the rule. It must be substantial, not trivial."

In the case of *Grimley* v. *Atlantic Coast Line R. R. Co.*,
57 S. E. Rep. 943, the Supreme Court of Georgia, declared
as follows: "*Vinton* v. *Middlesex R. Co.*, 93 Mass. (11 Al-
len), 304, 87 Am. Dec., 714, a leading American authority,

asserting not only the right, but also the duty of a carrier to eject an intoxicated person, or one in such condition as to induce the conductor to believe that the conduct of such person will become offensive or annoying to other passengers, rests largely upon the consideration that an injury by such person to a fellow passenger would give a cause of action against the carrier. We consider the doctrine of the Vinton case good law, and we would be much more inclined to view liberally, in favor of the carrier, a suit brought by the intoxicated or disorderly person for an ejection than we would a suit brought by a passenger for injuries occasioned by the carrier's failure to exercise the right and the duty to restrain or eject him. Decent and orderly passengers are entitled to claim a consideration superior to that to be accorded to those who are drunk or disorderly."

In the Massachusetts case, above approved, the Court said: "It being conceded, as it must be under adjudicated cases, that the defendants, as incident to the business which they carried on, not only had the power but were bound to take all reasonable and proper means to insure the safety and provide for the comfort and convenience of passengers, it follows that they had a right, in the exercise of this authority and duty, to repress and prohibit all disorderly conduct in their vehicles, and to expel or exclude therefrom any person whose conduct or condition was such as to render acts of impropriety, rudeness, indecency, or disturbance either inevitable or probable. Certainly the conductor in charge of the vehicle was not bound to wait until some overt act of violence, profaneness, or other misconduct had been committed, to the inconvenience or annoyance of other passengers, before exercising his authority to exclude or expel the offender. The right and power of the defendant and their servants to prevent the occurrence of improper and disorderly conduct in a public vehicle is quite as essential and important as the authority to stop a disturbance or repress acts of violence or breaches of decorum after they

have been committed and the mischief of annoyance and disturbance have been done.

"Indeed, if the rule laid down at the trial be correct, then it would follow that passengers in public vehicles must be subjected to a certain amount or degree of discomfort or insult from evil-disposed persons before the right to expel them would accrue to a carrier or his servant. There would be no authority to restrain or prevent profaneness, indecency, or other breaches of decorum in speech or behavior until it had continued long enough to become manifest to the eyes or ears of other passengers. It is obvious that any such restriction on the operation of the rule of law would greatly diminish its practical value. Nor can we see that there is any good reason for giving so narrow a scope to the authority of carriers of passengers and their agents as was indicated in the rulings at the trial. The only objection suggested is, that it is liable to abuse and may become the instrument of oppression. But the same is true of many other salutary rules of law. The safeguard against unjust or unauthorized use of the power is to be found in the consideration that it can never be properly exercised except in cases where it can be satisfactorily proved that the condition or conduct of a person was such as to render it reasonably certain that he would occasion discomfort or annoyance to other passengers, if he was admitted into a public vehicle or allowed longer to remain within it."

The error in the charge under consideration would probably be held cured by charging the second request of defendant, but throughout the subsequent charge it appears the Court was of the opinion that drunkenness of a passenger, without other overt act of disorderly conduct, would not excuse a carrier for ejecting him, whereas the law of Georgia appears to be that drunkenness, such as is likely to substantially annoy or disgust other passengers of normal sensibilities, or to reasonably cause apprehension of danger or

injury to other passengers, will excuse the carrier in ejecting him.

Exceptions are taken to the refusal of the Court to charge the following requests on the subject of punitive damages:

V. "That if the officers of a railroad company exercise reasonable care and due prudence in ejecting a passenger, and the jury are satisfied in so doing, they act in good faith without any evil intent or wantonness against the passenger of such railroad company, if it made a mistake in ejecting a passenger, would be liable for only actual damages.

VI. "Under the law of Georgia, vindictive or punitive damages can be awarded only in case of malicious ill will, wanton or aggravated circumstances from which the jury infer a wilful disregard of the rights of others."

Instead of so charging the Court charged as follows:

VII. "If in this case there was no ill will against plaintiff and no malicious, wanton and no reckless disregard of his rights, in that event, even though the jury may come to the conclusion that the defendant made a mistake with regard to plaintiff, the jury could only give to the plaintiff such actual damages as he has proved that he suffered, and they could not punish defendant.

VIII. "Punitive damages can not be given for an inadvertent, unintentional or unconscious violation of plaintiff's rights."

The Court further instructed the jury: "I charge you that you can not put upon the railroad company what is called punitive damages, damages to punish it, unless you are satisfied that circumstances show you that it intended to injure him, either actual or expressed. I mean, this, if his conduct was such as to show that it intended to humiliate Magill, or did not care whether it humiliated him or not, that is what is called implied intent."

The Court was not bound to charge in the language of the declined request, though correct, if the law was otherwise correctly declared. It appears that the instruction given fully and clearly covered the matter of the requests not charged. Furthermore, the Court instructed the jury in accordance with the statutes of Georgia set forth in the complaint and admitted in the answer as follows:

(c) Section 3905. "General rule. Damages are given as compensation for the injury done, and generally this is the measure when the injury is of a character capable of being estimated in money."

(d) Section 3906. "Aggravation. In every tort there may be aggravating circumstances, either in the act or in the intention, and in that event the jury may give additional damages, either to deter the wrong doer from repeating the trespass or as compensation for the wounded feelings of the plaintiff."

(e) Section 3907. "Vindictive damages. In some torts the entire injury is to the peace, happiness or feelings of the plaintiff; in such cases no measure of damages can be prescribed, except the enlightened conscience of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction and all of the attending facts should be weighed. The verdict of a jury in such a case should not be disturbed, unless the Court should suspect bias or prejudice from its excess or inadequacy.

(f) Section 3908. "Necessary expenses. In all cases necessary expenses, consequent upon the injury done, are a legitimate idea in the estimate of damages."

(g) Section 3913. "How to ascertain. Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recoverable.

(h) "Punitive damages are recoverable in an action against a railroad company by a passenger when the evidence shows that he was, without justification or excuse,

forcibly expelled from its train by the conductor or other employee in charge thereof." *O'Quin* v. *S. A. L. Ry.*, Supreme Court (Ga.), November 20, 1905; 53 S. E. Rep., 427; 2 L. R. A., 472 (N. S.).

There are other exceptions to the charge, but we deem the foregoing to be sufficient to dispose of the appeal based upon alleged errors in the charge.

One of appellant's exceptions assigns error in refusing to allow defendant's witness, Newman, to state that he made a public announcement to the passengers on the train going to Atlanta that no drinking would be allowed on the return trip. The question propounded to the witness was: "Will you state whether you made any announcement on that train going to Atlanta as to the conduct of these people?" Objection to this question was sustained. The brief contains this further statement: "When defendant sought to show by the witness, Newman, the announcement made on the train going to Atlanta, defendant's counsel stated to the Court that it was intended to show that defendant had publicly announced to the passengers of the train that no drinking would be allowed on the train by passengers on the return trip. His Honor refused to allow the defendant to prove this alleged fact.

We think the testimony was admissible as a promulgation of the regulation of the defendant company as to the excursion train, made under circumstances from which it might be inferred that it came to the notice of plaintiff.

While it was incumbent on defendant to bring notice of the regulation home to the plaintiff, and while it is true that plaintiff testified that he heard no such announcement, still the statement in the record is that public announcement was made to the passengers on the train and this would have been sufficient to raise an issue as to whether plaintiff had notice of the announcement.

The testimony was not irrelevant and was material in view of the Georgia statute giving the carrier right to eject

a passenger for refusing to comply with reasonable regulations, and in view of the defence that plaintiff was behaving himself in an unseemly manner and in violation of the law of Georgia when ejected.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.