## 10362

### PENDERGRASS v. SOUTHERN RAILWAY COMPANY.

(103 S. E. 150.)

1. MASTER AND SERVANT—NEGLIGENCE IN KICKING CAR INTO SIDETRACK HELD FOR JURY.—In an action under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for death of railroad employee working under a car on sidetrack, whether railroad employees were negligent in kicking a car into such track in violation of the company's rule, though there was no flag indicating deceased's presence as required by another rule, *held* a question for the jury.

2. MASTER AND SERVANT—ASSUMPTION OF RISK OF WORKING UNDER CAR WITHOUT FLAG HELD FOR JURY.—In an action under Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for death of a railroad employee working under car on a sidetrack into which a car was kicked, whether deceased assumed the risk of working under car without a flag indicating his presence as required by company's rules, where the duty of placing the flag was upon the employee under whom deceased worked, *held* a question for the jury.

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE IN WORKING UNDER CAR WITHOUT FLAG HELD FOR JURY.—In an action under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for death of a railroad employee working under a car on a sidetrack into

which a car was kicked, whether deceased was contributorily negligent in working under car without a flag indicating his presence, as required by company's rules, *held* a question for jury.

4. APPEAL AND ERROR—FAILURE TO INSTRUCT AGAINST AWARD FOR ADULT CHILDREN OF DECEASED NOT DEPENDENT HELD HARMLESS.—In administrator's action under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for death of employee, where the Court instructed that the administrator could recover only the pecuniary loss to the widow and children caused by the death, the failure to specifically charge the jury not to include anything for the adult children not dependent on deceased *held* harmless.

5. TRIAL—FAILURE TO REQUEST HELD WAIVER OF RIGHT TO INSTRUCTION.—In an action for death, where the Court told defendant's counsel that he would instruct the jury not to include in their verdict anything for the adult children not dependent on deceased, defendant's counsel's failure to call Court's attention to inadvertent omission to give such instruction, or to make request therefor, was a waiver of the right to have such instruction given.

Before MOORE, J., York, Summer term, 1918.    Affirmed.

Action by A. E. Pendergrass, administrator of the estate of Alex. Pendergrass, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant appeals.

*Messrs. McDonald & McDonald,* for appellant, submit: *The testimony fails to show any actionable negligence on the part of the defendant, and his Honor erred in not so holding, and directing verdict for the defendant:* 241 U. S. 333; 60 L. Ed. 1030; 241 U. S. 367; 62 L. Ed. 1167; 238 U. S. 507, 511, 512, and 59 L. Ed. 1433, 1436, 1437, Ann. Cas. 1916b, 252; 94 U. S. 468; 25 L. Ed. 256, at page 259 (L. Ed.); 105 U. S. 249; 26 L. Ed. 1071; 89 S. C. 15; 1 Strob. 550; 52 S. C. 323; 29 S. E. 905; 40 L. R. A. 679; 34 S. C. 293; 13 S. E. 537; 29 Cyc. 495. *His Honor should have directed a verdict upon the ground that the undisputed evidence shows that the death of plaintiff's intestate resulted from his own negligence, and no other reasonable inference could be drawn from the testimony:* 96 S. C. 222. *His Honor should have directed a verdict for defendant upon*

*the ground of assumption of risk on the .part of plaintiff's
intestate:* 233 U. S. 492; 58 L. Ed. 1062; 245 U. S. 441;
62 L. Ed. 385.    *His Honor should have granted a new trial
or reduced the verdict upon the ground that some of the
beneficiaries were not entitled to recover:* Roberts Injuries
Intestate Employees, sec. 79; 228 U. S. 173; 59 L. Ed. 785;
238 U. S. 507; 59 L. Ed. 1433, 1438.

*Messrs. Dunlap & Dunlap,* for respondent, submit: *In
law case verdict will not be disturbed upon the ground that
it is against the overwhelming weight of the testimony,
except where it is wholly unsupported by evidence:* 98 S. E.
848.    *As to assumption of risk:* 232 U. S. 94; 58 L. Ed.
521; 228 U. S. 319; 57 L. Ed. 852; Annotated Cases 1918a,
1067; 228 U. S. 114.    *When one is engaged in repairing a
car he does not assume the risk that the employees in charge
of a train will turn loose on him another car with no one to
watch for danger, and he has a right to assume that the
master will furnish him a safe and suitable place in which to
work:* Annotated Cases 1918a, 1067; 229 U. S. 114.    *If
there was any error in refusing to direct a verdict on the
ground that the servant assumes the risk of injuries occa-
sioned by the master's negligence, the appellant has waived
such:* 98 S. E. 848.

January 27, 1920.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Plaintiff recovered judgment against defendant, under
the Federal Employers' Liability Act (U. S. Comp. St., secs.
8657-8665), for $2,000 damages for causing the death of
his intestate, Alex. Pendergrass, by negligentiy kicking a
car into a sidetrack, so that it struck another car under
which intestate was at work and caused it to run over him.

Pendergrass was a colored laborer, and, on the day he
was killed, he was employed as helper to Baldwin, a car

repairer, and was subject to his orders. In defendant's yard, at York, there are two sidetracks, diverging from the main line, to wit, the oil mill track and the transfer track. Upon the latter, cars are placed which are to be transferred to and from the Carolina & Northwestern Railroad, a connecting line. There was on this track a flat or gondola car in bad order, which the Carolina & Northwestern had declined to receive. Baldwin and Pendergrass were sent to repair it.

Defendant's rule 26 provides that a blue flag displayed at one or both ends of a car indicates that workmen are under or about it; and, when thus protected, it must not be coupled nor moved; that workmen will display the blue signals, and the person who plants one is the only one authorized to move it.

Another rule (393) reads:

"They must not allow running or flying switches to be made where it can be avoided, and when unavoidable, such movements must be made with all the care necessary to absolutely prevent accident."

Defendant devoted some effort to an attempt to prove that rule 393 was not intended to apply to the practice of kicking cars, and some of its witnesses testified that running and flying switches are the same, and described the manner in which they are made and wherein it differs from kicking cars; and they said there was no rule against kicking cars in yard switching. But it is inferable from the testimony of some of them that it is contrary to the rules for cars to be kicked, unless they are equipped with hand brakes and have a brakeman on them to control them. There was no brakeman on the car that caused the death of Pendergrass.

There is little, if any, difference in the probable consequences of flying or running switches and kicking cars. In both, the car is turned loose on the track, under a momentum previously given to it, and it runs without control from the engine. No doubt, the rule was intended to avoid the

7—S. C. 114

consequences of such operations rather than the operations themselves, by whatever name they may be called.

Keeping in mind the purpose of the rule, we think there is no doubt that it was violated, when the car was kicked into the transfer track, because defendant's witnesses admitted that there was no necessity and no reason for doing so, except that it saved a little time, and that it could have been avoided.

In fact, they denied that Pendergrass was killed by a kicked car, and said that the movement of the car under which he was at work was caused by the train backing into the transfer track slowly and carefully, under control from the engine, for the purpose of coupling to a box car in front of the bad order car, so that it could be taken from the transfer track to another place; and, of course, in that case, there would have been no reason to kick the car into the transfer track. They admitted, however, that they kicked a car into the oil mill track before Pendergrass was killed, and that they kicked several cars into the transfer track, but said that was done after he had been killed.

We state the substance of the testimony of the material witnesses on the main points of contention as to whether the injury was caused by a kicked car, and as to whether Baldwin and Pendergrass had been working on the bad order car, or had merely inspected it to find out what was to be done.

Theodore Witherspoon: On the day Pendergrass was killed, he and a white man had been working on the air brakes of a car on the transfer track. There were two other cars on the track. These were box cars. The flat car was between them. They were working in between them. Some time afterwards, saw Pendergrass standing about 10 feet from the track. Think the white man had gone somewhere.

Nita Witherspoon, wife of Theodore: Saw the freight train come around there; about the time the engine was at

the trestle, they let a box car loose, and it just came like a streak up the track; have often seen them do that; they do it very often; there was no one on that car; it just came like a streak, faster than the engine, and the next thing I heard was the crash against the box cars. Was sitting on the porch at my house, when that car was kicked down there, and it came by me. Didn't pay any attention to it after it passed. It was afterwards I heard the crash.

Thomas Reid: Saw Pendergrass sitting under car; had tools and was hammering on something, when ·I passed. Train was on main line. Saw train come over on transfer track. They kicked two cars back on gondola. Knocked car under which he was working about 30 feet. There was no one on cars kicked in.

Baldwin, the car repairer: Was sent with Pendergrass from Rock Hill to York to repair bad order car on transfer track. Carried a keg of tools and blue flag. When we got to the car, I looked to see what was the matter with it. The brakes were off—the brake staff was broken off. Had to go back to the shop to get one. While I was going, I looked up and saw that the local freight had gotten to the station. If there was any defect in the air, I couldn't find it, and I wanted to get the engine to put the air on the car. Left Pendergrass there, standing out watching the growing crops. Told him to stay there and watch the tools, and also to watch for the engine and head it back in there, because I wanted to get the air on the car. Did not tell him to go under car or to do any work while I was away. I went across. The engine went around and came back in there. Didn't know they were going in there. Saw them cut loose from the cab, and ran to catch them. While I was on the way, they backed up, and I got on the engine and rode back, and, while I was on the engine, Truesdale (a brakeman) came up and told me they had killed my helper. Saw nothing under the car, except the torch, which is carried to find if there is a leak. (Another witness said there was also a

· wrench under the car.)    I did no work on the car before I left—simply made an examination, and only found the brake staff was broken.    I stood at the side of the car and tested the couplings with a wrench, which I told him to hand me.    I squatted down at the side of the car and reached the coupling with the wrench.    Did not go between rails. Did not put up blue flag, because we had not gone to work. We never use flag on inspection—not until we find something to do.    I am the one that puts up flag.    If he undertook to do some work (while I was away), it would have been his duty to put up flag.    I was in charge of the flag, but it was his duty to put it up; the rules say the man that does the work shall put up the flag.    I was in charge of the work, and had to tell him what to do.    The work was to be done under my direction.

Defendant contends that there was no evidence of actionable negligence; that, even if the kicking of cars may be found to be negligence, it was no breach of duty to Pendergrass, because the train crew did not know, and had no reason to believe, that he, or any one else, would be under or about the cars on the transfer track; and that the only reasonable inference to be drawn from the testimony is that Pendergrass went under the car after Baldwin left him, with instructions only to watch the tools and look out for the engine and have it come into the transfer track to test the air; and, having done so, it was his duty to put up the blue flag, and his failure to do so was the sole cause of his death; and that, in going under the car, under the circumstances, he assumed the risk of injury.

Plaintiff contends that the testimony is susceptible of the inference that Baldwin and Pendergrass had not only been inspecting but working under the car, without the protection of the blue flag, which it was Baldwin's duty to display, and that Baldwin went off, leaving Pendergrass to continue the work of inspection or repair; that inspection may be of such a nature as to require the protection of the blue flag,

as well as the more extensive operation of repair; that as Pendergrass knew that Baldwin knew that he would be at work under or about the car, he had the right to assume that Baldwin would have the engine come into that track with care commensurate to the circumstances; and that, even if it can be said that he was negligent in going under the car, without having planted the blue flag, it was, under all the circumstances, only contributory negligence, which, under the Federal statute, will not defeat, but only diminish, the recovery, as to which the jury was properly instructed; that, if the flag had been displayed, it would have afforded no protection against a car kicked into the transfer track, with no brakeman on it to control it; and that such kicking of cars was of itself not only negligence, but a positive violation of defendant's rules, which Pendergrass had the right to assume would be obeyed; that it was especially negligent, in the circumstances of this case, because of the downgrade and the obstructions to the view of an approaching car, caused by the curvature of the track and the bushes and weeds which were shown to have been growing along the track—all of which prevented Pendergrass from protecting himself against injury from a kicked car, though he might have been able to protect himself against injury, if the train had been backed in under control in a reasonably careful way. And, as to the assumption of the risk, that Pendergrass cannot be held, as matter of law, to have assumed it, because it was Baldwin's duty to put out the blue flag; but, even if it can be said, as matter of law, that Pendergrass should have put it out, then he cannot be held to have assumed any greater risk than that of injury incident to the usual operations carried on in an ordinarily careful manner, according to the rules of the company, which would exclude the extraordinary risk of being injured by a car kicked in on him, in violation of the rules. Just here it may be said that there was no evidence that Pendergrass knew of the practice of kicking cars.

We think the testimony is susceptible of the inference that Pendergrass was killed in consequence of a car having been kicked into the transfer track; that that was not only an act of negligence, but a violation of defendant's rule, and also that it was a breach of duty to Pendergrass, because the employees of the company, working in and about the yards, and having to cross and recross the tracks and be in and about the cars standing thereon, have the right to assume that switching in the yards will be done with due care and according to the rules of the company. They should expect such operations, and take due care to guard against injury from them. But they have a right to assume that they will not be subjected to extraordinary risks and dangers, such as cars being kicked about in the yards with no one on them to control them, contrary to common sense and prudence and the rules promulgated for the government and protection of all employees.

Defendant's agents might not have been able to foresee that Pendergrass, or any one else, would be under a car without the protection of a blue flag; but they should have foreseen that employees of the company might be at work in the yard and in or about the cars standing therein. On the other hand, Pendergrass might not have been able to foresee that they would be so negligent as to kick a car into the transfer track with no one on it to control it. He might have been willing to work under the car, without a blue flag, and assume the risk incident to the usual and ordinary operations in the movement of cars in the yard, carried on with reasonable care and according to the rules; but he might not have been willing to assume the greater risk of injury from a car kicked with such great force downgrade and around a curve, with no one on it to control it. It is inferable that a blue flag would have afforded him no protection against injury from such an operation.

Moreover, we think the testimony is susceptible of the inference that the failure to display a blue flag was the

fault of Baldwin, whose fault is imputable to the company. Without conceding the correctness of Baldwin's application of the blue flag rule (according to which he never put out a flag, when he was only making an inspection), since some inspections may require as great exposure to danger and for as long a time as simple repairs, we think the testimony of plaintiff's witnesses is susceptible of the inference that they (Baldwin and Pendergass) had been at work under the car before he left Pendergrass. If so, according to his own testimony, it was Baldwin's duty to put up the flag, and Pendergrass had the right to rely upon his superior judgment as to that matter. And, as he told Pendergrass that he was going to get the engine to come in to test the air, it may be that Pendergrass assumed that, knowing his situation, he would see that the engine or cars were brought in with care commensurate with his situation, and was on the lookout for such an operation, but was surprised and unable to protect himself against the greater speed of the kicked car. All things considered, we find no error in submitting the issues of negligence, contributory negligence, and assumption of risk to the jury.

Defendant assigns error in the refusal of its motion to grant a new trial, or reduce the amount of the verdict, because three or four of the beneficiaries named in the complaint (children of deceased) were not dependent upon him, and suffered no pecuniary loss on account of his death. Deceased left a widow and nine children. It appeared that three, and possibly four, of the children were of age and not dependent on him.

The record has the following statement:

"During the argument of the motion for direction of a verdict, defendant's counsel took the position before the Court that the jury, under the decisions of the Supreme Court of the United States, construing the Federal Employers' Liability Act, would have to apportion the verdict among the beneficiaries, as the evidence showed that some of the

beneficiaries were not dependent upon the deceased, and sustained no pecuniary loss on account of his death, and counsel requested his Honor to charge the jury that certain of the alleged beneficiaries, being overage and living apart from the deceased, were not entitled to claim any damages under the Federal Employers' Liability Act. His Honor stated that he would charge the jury upon that point in his general charge, and thereupon counsel for defendant withdrew the right to have the verdict apportioned."

The jury were instructed that plaintiff could recover only the pecuniary loss to the widow and children caused by the death, and, in view of what had been said between the Court and the defendant's counsel, in the presence of the jury, we are satisfied that defendant suffered no prejudice on account of the inadvertent failure of the Court to instruct the jury specifically not to include anything in their verdict for the adult children who were not dependent on deceased. Besides, as the Court had told defendant's counsel that he would so instruct the jury, and as defendant's counsel sat by and heard the charge, when no such instruction was given, it must have been apparent that that it was a mere inadvertence, and by failing to call the Court's attention to it, and request the instruction promised, defendant's counsel waived the right to have such instruction given.

Judgment affirmed.