12121

MANN v. SEABOARD AIR LINE R. CO.

(136 S. E. 234)

1. TRIAL—EVIDENCE MUST BE CONSTRUED MOST FAVORABLY TO OPPONENT OF MOTION TO DIRECT VERDICT.—On motion to direct verdict, construction of evidence most favorable to opponent of motion must be adopted.

2. MASTER AND SERVANT—DIRECTED VERDICT FOR MASTER SHOULD NOT BE GRANTED, UNLESS BUT ONE INFERENCE CAN BE DRAWN.—In action for injuries to employee, directed verdict for master should not be granted, except where court can say that no other reasonable inference can be drawn from evidence than that master had discharged duty to servant.

3. MASTER AND SERVANT—RAILROAD'S NEGLIGENCE IN FAILING TO GIVE CAR REPAIRER NOTICE OF KICKING CAR INTO TRACK HELD FOR JURY.— In action for injuries to employee resulting in his death, evidence as to railroad's negligence in failing to give employee, who was car repairer, notice of kicking car into repair track, *held* to raise question for jury.

4. MASTER AND SERVANT—RISK OF FELLOW SERVANT'S NEGLIGENCE IS NOT ASSUMED UNDER FEDERAL ACT (FEDERAL EMPLOYERS' LIABILITY ACT [U. S. COMP. ST. §§ 8657–8665]).—Under the Federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), a servant of railroad does not assume risks caused by negligence of employer, its agents, servants, or its officers.

5. APPEAL AND ERROR—LIMITING ALLEGATIONS OF NEGLIGENCE TO RAILROAD'S FAILURE TO FURNISH SAFE PLACE TO WORK HELD FAVORABLE TO DEFENDANT, AND NOT SUBJECT FOR COMPLAINT.—In action for injuries to railroad employee resulting in his death, action of lower Court in limiting allegations of negligence to defendant's failure to furnish a safe place for car repairers to work, being favorable to defendant, cannot be complained of.

6. MASTER AND SERVANT—SERVANT ASSUMES ONLY ORDINARY RISKS.— Servant assumes risks ordinarily incident to, and connected with, work he is hired to do, but does not assume any extraordinary risks.

7. MASTER AND SERVANT—RAILROAD'S CUSTOM MAY BE SHOWN AS BASIS ON WHICH EMPLOYEE COULD RELY.—Custom of railroad in operating its road may be shown as basis on which employee has right to act and rely.

8. MASTER AND SERVANT—EVIDENCE OF RAILROAD'S CUSTOM OF GIVING VERBAL NOTICE TO CAR REPAIRER BEFORE KICKING CARS HELD COMPETENT.—In action for death of car repairer, resulting from railroad's alleged negligence in kicking a car into track in which he was working, evidence showing railroad's custom of giving verbal notice of kicking cars into track *held* competent.

9. MASTER AND SERVANT—CHARGE ON WILLFULNESS, WANTONESS, AND RECKLESSNESS HELD INAPPLICABLE IN CASE UNDER FEDERAL EMPLOYER'S LIABILITY ACT (U. S. COMP. ST. §§ 8657–8665).—In action for death of car repairer, submitted to jury under Federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), charge as to negligence, willfulness, wantonness, or recklessness is inapplicable.

10. MASTER AND SERVANT—CHARGE HELD TO SUFFICIENTLY STATE RECOVERY COULD NOT BE HAD ON MERE SHOWING OF CAR REPAIRER'S INJURY.—Charge, in action for death of car repairer, resulting from railroad's alleged negligence in kicking car into track where he was working, *held* to sufficiently show that recovery could not be had on mere showing that deceased was killed in railroad yard.

11. TRIAL—REQUEST COVERED BY GENERAL CHARGE NEED NOT BE GIVEN.—
    Refusal to charge request covered by general charge is not erro-
    neous.

12. TRIAL—CHARGES ON FACTS HELD PROPERLY REFUSED.—Requested
    charges on facts *held,* properly refused.

13. APPEAL AND ERROR—JUDGMENT WILL NOT BE REVERSED FOR TRIAL
    ERRORS, WHERE VERDICT WAS MODERATE, AND ANY JURY WOULD HAVE
    RENDERED SAME VERDICT, IF NO ERROR WAS COMMITTED.—Where ver-
    dict is moderate, and examination of record shows that verdict
    of any fair-minded jury would have been the same, even if no
    error had been committed, judgment will not be reversed for trial
    errors.

Before DeVORE, J., Abbeville, April, 1925.   Affirmed.

Action by G. E. Mann, as administrator of the estate of
S. B. White, deceased, against the Seaboard Air Line Rail-
way Company.   Judgment for plaintiff and defendant ap-
peals.

The trial Court's instructions on the law applicable to the
assumption of risk, and to the effect that recovery could not
be had on mere fact that employee was killed in the railroad
yard, are as follows:

"The defendant, having set up the defense of assumption
of risk, has got to prove that by the greater weight or pre-
ponderance of the evidence before that defense could be
successful in this case.   On the other hand the plaintiff has
to prove his case by the greater weight or preponderance of
the evidence.   That is to say, that, if the evidence in support
of the plaintiff's cause of action is evenly balanced with that
opposed to it, the plaintiff cannot recover, because the law
says that the testimony in support of the plaintiff's cause of
action must be heavier, outweigh, and go down, and prepon-
derate over that opposed to it.   If that be so, the plaintiff
would be entitled to recover."

"The defense says that the servant in this case assumed
the risk of his work.   Now the law in regard to that is this:
A servant assumes the risks that are ordinarily incident to,
and connected with, the work that he is hired to do.   But he

does not assume any extraordinary risk. It is just the risks that are ordinarily incident to, and connected with, the work that he is hired to do; and that is just as much binding on the servant as if he had signed a contract with the master in which he says that, 'if I am injured or killed by any of the risks that are ordinarily incident to, and connected with, this work, I can't hold you liable,' and, if he was so injured or killed on that account, the master would not be liable. But, if there was any risk imposed upon him outside of those that are ordinarily incident to, and connected with, the work, imposed on him by the master, that he knew nothing of, and that was the cause of the injury or death, why the master would be liable, responsible, for it."

*Messrs. Glenn & Glenn* for appellants, cite: *In action for injury under Federal Employers' Liability Act, failure of injured to perform positive duty which would insure his safety bars recovery, even though fellow employees might have prevented injury*: 160 S. C., 512; 106 S. E., 565; 70 L. Ed., 605; 69 L. Ed., 212; 263 U. S., 1; 68 L. Ed., 131; 235 S. W., 97; 224 S. W., 415; 168 S. W., 274; 230 F. 88; 216 P., 195. *Action to recover for death under Federal Employers' Liability Act based on negligence which must be affirmatively proved:* 9 F. (2nd), 856. *Doctrine of assumption of risk under Federal Employers' Liability Act:* 8 F. (2nd), 30. *Employer loses benefit of defense of assumption of risk under Federal Employers' Liability Act only upon violation of statute enacted for safety of employee:* 58 L. Ed., 1062; 82 S. E., 433. *Requests to charge:* 90 S. C., 414; 73 S. E., 785; Rule 11 of Circuit Court 1922; 38 Cyc., 1703.

*Mr. Wm. P. Greene* also for appellant, cites: *Actionable negligence:* 96 S. C., 238 *In action for injury under Federal Employers' Liability Act, failure of injured to perform positive duty which would insure his safety bars recovery, even though fellow employees might have prevented the injury:* 115 S. C., 398; 130 S. E., 880; 266 U. S., 147; 263

·U. S., 1; 240 U. S., 444.   *Assumption of risk.*: 233 U. S.,
492.

December 9, 1926.

The opinion of the Court was delivered by MR. ACTING
ASSOCIATE JUSTICE RAMAGE.

The preliminary statement appearing in the agreed case
is adopted, and it is as follows:

"The above-stated action was commenced by the service
of summons dated October 30, 1924.   Plaintiff sought to
recover damages against the defendant-appellant on account
of the alleged wrongful killing of plaintiff's intestate. S. B.
White, in the yards of Seaboard Air Line Railway Company
at Abbeville in said state, on October 30, 1923."

The suit is brought for the benefit of the widow and chil-
dren of the said S. B. White by the administrator.   The
complaint alleges negligence, recklessness, wantonness, and
willfulness, and is appropriate to both actual and punitive
damages; but the judge held that the case was under the fed-
eral Employers' Liability Act, and eliminated punitive dam-
ages, and the case was submitted to the jury on the question
of actual damages only.   S. B. White died intestate, and it is
admitted that at the time the mortal injuries were inflicted
upon him he was an employee of the defendant as car re-
pairer in its yard at Abbeville on track No. 7.   The rela-
tion of master and servant between the deceased and the de-
fendant is admitted.

The record further shows that on the morning of October
30, 1924, S. B. White, J. R. White, and Clifton Sprouse
were repairing cars on west end of track No. 7 in said yard,
and at 12 o'clock they knocked off for dinner, and went east
to a shanty car or cab, which was possibly about midway be-
tween the eastern and western limits of the yard.   Between
11 :20 and 12 o'clock, a car was put in No. 7 track, and the
switchman, Douglas, stopped it before it collided with the
car on which Sprouse was at work.   Sprouse was then brass-
ing a car on track No. 7, and Douglas, the switchman, had a

conversation with him. At 12:30 the car repairers returned to their work on said track, and the yard foreman was with them. Sprouse, a witness for defendant, and one of the car repairers, testified as follows:

"Q. Mr. Sprouse, I believe you came out here with Mr. White and Mr. Carter. Mr. White (refering to S. B. White) said that he needed a knuckle pin, and Mr. Carter told him to get one where? A. Mr. Carter told him not to draw a knuckle pin over to the storeroom, but to look on the platform.

"Q. He (referring to yard foreman) didn't tell you to go anywhere? A. No, sir.

"Q. Just told Mr. Shirley White? A. Yes, sir.

"Told Mr. Shirley White to go to the clinker pit? A. Yes, sir.

"Q. He didn't say where Mr. Jim White should go? A. No, sir.

"Q. You went back to work? A. After Mr. Carter left and went up the track, I went over and went to packing the box."

Carter, the yard foreman, testified that he knew there was shifting on the track. The record shows that he knew that S. B. White was going to fit a coupling pin, and, after directing him where to get it, then says he directed him not to work on the track, but to go to the cinder pit, though said foreman did not notify the other two car repairers at work on track No. 7 to resume their work, and they returned to their work on said track. The jury had the right to draw inferences, and evidently they concluded that the yard foreman directed Mr. S. B. White to go to the cinder pit after he had fitted the pin, if he told him at all. The record shows that Sprouse was at work on a car between the car on which plaintiff's intestate was at work and the lead track, that is, west of where White was when injured, and that a car without switchman or brakeman on it was kicked into track No. 7, with great force, and the impact with the first car caused

a succession of impacts with the cars on No. 7, until the car being repaired by S. B. White and J. R. White was suddenly struck, and he was dragged some feet and mortally injured.

No notice was given that a car would be kicked then into track No. 7, though it was the custom of the defendant to send some one down the track to give such notice. No derailer protected the car repairers, and no flag was up to give notice of the car repairers on track No. 7, but Sprouse testified that it was his duty to place the derailer, and the yard foreman testified that he saw that the derailer was not up, and that, while it was his duty to require the car repairers to keep them up, on this occasion he did not do it, for there was no room on the track for it, as the track was blocked with cars. The yard foreman was vice principal on the spot, and he knew they were kicking cars into the track No. 7, and knew that car repairers were at work on that track, and knew they were not protected by derailers or flag, and failed to require the defendant to observe the custom at this time of giving notice of kicking a car into that track.

The defendant offered in evidence several rules, among them rule 104 (e), which provided: "Running switchers must not be made." Other rules offered by defendant required car repairers to display blue signal by day, etc. The switching crew knew that car repairers were at work on track No. 7; nevertheless kicked a car into that track without notice to them. All of said acts and omissions to act involved questions of fact for the jury, and the jury solved them in favor of the plaintiff.

After all the testimony was in, and both sides closed, the defendant made a motion for the direction of a verdict for the defendant on the following grounds:

"That there is no proof of negligence in any of the particulars alleged and set forth in the complaint.

"That the undisputed evidence in this case shows that Mr. White's disobedience of orders given on the spot and the

rules of the company, for which he was working, is the prox-
imate cause of his own injury.

"That Mr. White was engaged in interstate commerce, and
the question of liability is to be determined by the act of
Congress and the decisions of the Supreme Court on the
act of Congress; and that, even under the state laws, the de-
fendant is entitled to have a verdict directed for it on same
grounds."

The Court overruled the motion, and delivered his charge
to the jury, and, after deliberation, the jury rendered a ver-
dict for the plaintiff for $6,500.   Within due time notice of
appeal and exceptions were served.

In *Pendergrass v. Southern Ry. Co ,* 114 S. C., 78; 103
S. E., 150, this Court held:

"In an action under the federal Employers' Liability Act
(U. S. Comp. St. §§ 8657–8665) for death of railroad em-
ployee working under a car on side track, whether railroad
employees were negligent in kicking a car into such track in
violation of the company's rule, though there was no flag in-
dicating deceased's presence as required by another rule, held
·a quesion·for the jury."

"And, as to the assumption of the risk, that Pendergrass
cannot be held, as matter of law, to have assumed it, because
it was Baldwin's duty to put out the blue flag; but, even if it
can be said, as matter of law, that Pendergrass should have
put it out, then he cannot be held to have assumed any great-
er risk than that of injury incident to the usual operations
carried on in an ordinarily careful manner, according to the
rules of the company ,which would exclude the extraordinary
risk of being injured by a car kicked in on him, in violation
of the rules."   114 S. C., 81; 103 S. E., 152.

See, also, *Koennecke v. S. A. L. Ry.,* 101 S. C., 87; 85
S. E., 374; *Pinckney v. A. C. L. Ry.,* 92 S. C., 528; 75 S.
E., 964.

The exceptions will now be considered.

Exceptions 1 and 2 raise the same objection, and will be

considered together. Should the Court have directed a verdict for the defendant? We hold not under the facts disclosed by the record.

In the case of *Wilson v. A. C. L. Ry. Co.,* 134 S. C., 1, 2  31; 131 S. E., 777, it is held:

"On motion to direct verdict, construction of evidence most favorable to opponent of motion must be adopted."

"In action for injuries by employee, directed verdict for defendant should not be granted, except where Court can say that no other reasonable inference can be drawn from evidence than that master had discharged his duty to servant."

"In action for injuries to section hand, working with foreman in clearing track, held that question whether foreman, in exercise of due care, should have appreciated danger, was properly left to jury."

*McAlister, Adm'x, v. So. Ry. C.,* 130 S. C., 458; 26 S. E., 627, held:

"In action under federal Employers' Liability Act * * * for death of engineer who backed engine into freight train at night, question of whether engineer had assumed the risk, for jury. * * * Assumption of risk is based on knowledge or notice of danger and the appreciation and intelligent understanding of it."

"Employee does not assume risk of emergency brought about by other servants in the negligent operation of a train or in providing safe place, rules, and appliances." This case was carried to the United States Supreme Court, and was dismissed; and, therefore, the principles announced therein were adopted by that Court.

In *Seaboard A. L. R. Co. v. Horton,* 233 U. S., 504; 34 S. Ct., 640; 58 L. Ed., 1070; L. R. A., 1915, C 1; Ann. Cas., 1915B, 475, the Supreme Court of the United States held:

"Some employments are necessarily fraught with danger

to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

The testimony in this case is not in dispute that the defendant failed to give S. B. White notice that a car would at once be kicked into that track; hence it is clear that the risk to him was not obvious, especially when Sprouse was working nearest the lead track, and it was his duty to place the flag, for a servant is presumed to do his duty. And the yard foreman walked along track 7 to or near the lead track, saw no flag was up, and it was his duty to have Sprouse set it up, but he breached his duty; and the custom to give the car repairer verbal notice of kicking a car into the track was disregarded. Kicking a car into track No. 7 in those circumstances certainly created a risk that was not obvious or ordinary; at least it raised a question for the jury. The motion for a directed verdict for the defendant was properly refused.

For a full discussion of the Federal Employers' Liability Act, see annotation in 12 A. L. R., at page 693 et seq.

It is needless to multiply authorities on the well-established principle that under the Employers' Liability Act a servant does not assume risks caused by the negligence of the master, its agents, servants, or officers. The act itself is sufficient.

Exceptions 3 and 5 make the same point, and will be treated together. His Honor did limit the allegations of negligence to one, to wit, a failure to furnish the plaintiff a safe place to work, but the defendant cannot complain of this view of the Court, for it was favorable to the defendant; besides, the other acts of negligence alleged may be deemed to have culminated in making the place where plaintiff's intestate was mortally injured unsafe. These exceptions are overruled.

Exception 4 is evidently based on a misconception of his Honor's charge which properly stated the law applicable to the burden of proof. This exception must be overruled.

Exception 6 contends that his Honor did not charge correctly the law applicable to the assumption of risk. At folio 454, the Court instructed the jury accurately on this subject. This exception is overruled.

Exception 7 raises the point that there was no evidence of custom. Evidence was offered that tended to show custom, and it was admitted. This exception is overruled.

In *McAlister v. So. Ry. Co.,* 130 S. C., page 459; 126 S. E., 627, this Court held:

"The custom of a railroad in operating its road may be shown as a basis on which employee had a right to act and rely."

During the trial of the case, defendant's counsel frequently inquired about the practice of the employees, and the word "practice" was used as a synonym of "custom." In the circumstances of this case, it was competent to show the custom of giving verbal notice of kicking cars into the track. This exception is overruled.

Exception 8 imputes error to his Honor in failing to make a charge as to negligence, willfulness, wantonness, and recklessness. His Honor submitted this case to the jury under the federal Employers' Liability Act, and this request was not applicable to the case; however, the

general charge covered some little portion that might have been applicable. The exception is overruled.

Exception 9 complains that his Honor erred in not giving to the jury the request referred to in said exception, to the effect that plaintiff could not recover upon the mere fact that deceased was killed in defendant's yard. Counsel evidently overlooked the charge at folio 463 of the "case." This exception is overruled.

Exceptions 10, 11, 12, 13, 17, and 18 impute error to his Honor for refusing to charge the requests mentioned in them, but they were covered by the general charge. It was held in *Tucker v. Clinton Cotton Mills*, 95 S. C., 302; 78 S. E., 890, where the judge embodies in a general charge the substance of requests, there is no error in not charging the requests as submitted; covering requests in general charge sufficient. Also see, *State v. Dean*, 72 S. C., 74; 51 S. E., 524; *Magill v. Seaboard A. L. R. Co.*, 84 S. C., 416; 66 S. E., 561; *Martin v. Columbia St. Ry. L. & P. Co.*, 84 S. C., 568; 66 S. E., 993; *State v. Bates*, 87 S. C., 434; 69 S. E., 1075. The exceptions are overruled.

Exceptions 14, 15, and 16 alleged error in his Honor's failure to charge the requests set out in them, and these exceptions may be grouped. They are on the facts, and were properly refused; however, the legal principles requested were covered in the general charge. These exceptions are overruled.

An examination of the record in this case shows that the plaintiff had a good cause of action, that the verdict is very moderate, and, if there was error in the trial, any fair-minded jury would have rendered the same verdict, even if no error had been committed in the trial thereof. In such case the principle of law is well settled in this state that the judgment will not be reversed.

In the case of *Lowe v. Ottaray Mills*, 93 S. C., 426; 77 S. E., 137, it was held:

"But this Court should not order a new trial where from

an examination of the record it has no doubt the verdict of any fair jury would have been the same, even if no error had been committed.    In such a case the errors should be regarded not prejudical."

See, also, *Dennis v. Street Railway*, 93 S. C., 299; 76 S. E., 711; *Cooper v. Seaboard Air Line R. Co.*, 78 S. C., 81; 58 S. E., 930; *State v. McPhail*, 115 S. C., 333; 105 S. E.. 638; *Sloan v. Glenn*, 113 S. C., 387; 101 S. E., 823.

The judgment appealed from is affirmed.

MESSRS. JUSTICES WATTS, BLEASE and STABLER, concur.

MR. JUSTICE COTHRAN did not participate.