### ROTH et al. v. HYER et al.
No. 10255.

Circuit Court of Appeals, Fifth Circuit.
Jan. 15, 1943.
Rehearing Denied Feb. 12, 1943.
Writ of Certiorari Denied April 5, 1943.
See 63 S.Ct. 859, 87 L.Ed. ——.

H. N. Roth and Clark W. Jennings, both of Orlando, Fla., and Lloyd B. Kanter, of Brooklyn, N. Y., for appellants.

C. P. Dickinson, Hugh Akerman, and J. Thomas Gurney, all of Orlando, Fla., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for damages for breach of a contract of sale of a chose in action, a claim of defendants against the United Cigar Stores Company, a corporation, then in 77B reorganization proceedings. Bankr. Act, 11 U.S.C.A. § 207. The claim was that defendants, Hyer and Davis & Son Co., through their attorney and agent Schelker, authorized to act and acting for them, had contracted to sell the claim to plaintiffs, by accepting an offer plaintiffs had made by telephone and confirming that acceptance by letter.[1] There was an alternative claim against defendant Dickinson that he had held himself out as having authority to act for defendants in effecting the contract of sale and that if this was not in law and in fact so, he should be held for breach of his warranty of authority. Dickinson's motion for a more definite statement of the count against him and to dismiss it for failure to state a claim was on December 18, 1940, granted, and the complaint was dismissed as to him. The other defendants, pleading want of authority in Schelker and

[1] "This will confirm our telephone conversation in respect to the sale to your company by our client of Landlord's Claim No. 5145, United Cigar Store Company of America, the claim having been allowed in the amount of $68,629.77 by order of Erwin Kurtz, Special Master, entered December 4, 1935.

"The owners of the claim, being the ones who will execute the assignment to you, are R. L. Hyer, May Hyer, and W. M. Davis & Son Co.

"The purchase price of the claim is to be 75% of the face thereof, in cash, payable on delivery of the assignment.

"I understand that you will forward me the assignment form you will require. Will you be good enough to send me an extra copy thereof so that I can have one for my record?"

Dickinson to bind them, denying the making of the contract of sale and pleading the statute of frauds, asserted that there was no note or memorandum in writing of the contract signed by them or their lawfully authorized agent. Tried to the court without a jury, there were findings of fact and conclusions of law[2] and a judgment on December 11, 1941, in defendants' favor.

The material facts are without dispute. Dickinson was the attorney for the sellers with respect to their claim against the United Cigar Stores Co. in reorganization, and he was authorized by them to, and did, retain the firm of which Schelker was a member to represent them in the reorganization proceedings, and the sellers did on February 24, 1934, constitute and appoint Schelker and his partner their attorneys-in-fact for the purpose of those proceedings. On March 30, 1937, one of the appellants, acting for them all, telephoned Schelker, as the attorney for seller, an offer of 75% of the net claim in cash. On the same day Schelker telephoned the offer to Dickinson, at the same time telling him, and Dickinson did not take the stand to deny this testimony, of the details of the suggested plan of reorganization under which sellers and other general creditors would receive for each $1,000 of claim $250 in cash, $250 in 5% bonds maturing in 1952, 5½ shares of non par cumulative preferred stock and 150 shares of non par common. Dickinson, telling Schelker that he would submit the matter to their client[3] and call back, did call him back to tell him that the matter had been discussed with the clients and that they were willing and ready to accept the offer, and to direct him to consummate the transaction with the appellants and forward the assignment of

[2] These were (1) that Schelker's letter to appellants on March 31, 1937, confirming the sale was not a sufficient memorandum under the statute of frauds; (2) that the minds of the sellers and appellants had not met on the terms of the sale because the appellants knew and the sellers did not at the time of the alleged contract what were the precise terms of the proposed plan of reorganization of the United Cigar Stores Company; (3) that because it did not provide for the form of the assignment and the place of the payment of the price and delivery, the written confirmation does not evidence all of the essential terms of the agreement, and, therefore, it is not a sufficient compliance with the statute of frauds; and (4) that Schelker did not have authority to sign a memorandum binding the sellers and that the sellers did not ratify the letter of confirmation because they did not know of it. He concluded that the evidence was not sufficient to show that Schelker had authority from the sellers and that Dickinson, their agent, was not authorized to appoint a subagent to sign a written memorandum binding under the statute of frauds.

[3] The record shows without contradiction that a meeting was had, the offer was accepted, and Dickinson was instructed to communicate to Schelker sellers' acceptance of the offer. Hyer testified, "The first I heard of the offer of 75¢ on the dollar was Davis came to my house one night and said that Dickinson had had a telephone message from these people or this lawyer in N. Y., and they would give 75¢ on the dollar for it, and I said, 'Wasn't there no money in it?', and he said, No, he didn't think so. 'I went to Dickinson's office the next morning, and he read from a little scrap of paper what the telephone message was, and I asked him if there was any money involved, and he said, 'No', and then I said, 'Well, we will sell it for that price if there is no money involved in it.' I told Mr. Dickinson if there was no money consideration, then we would take the 75¢. And Mr. Dickinson thereafter submitted a contract for us to sign. I told Mr. Dickinson I wouldn't sign that form. I understood we were to get 75¢ on the dollar, but I understood at that time that there was no cash to be paid out. 'What objection did you have to the form?' 'The assignment provided if they didn't get their money out of it, they would hold us responsible and come back on us. Dickinson said he thought he could draw up a form that they would sign and cut out the obligation.'" He further testified that his objection to selling the claim if any cash was to be paid to creditors was that he was not selling cash money and he would not sell it at that price if there was to be any cash paid on the claim. To the question, "Just what did you tell Mr. Dickinson when you went up to his office about the 75% offer?" "I told Mr. Dickinson that if there was no money consideration I would take the 75¢ on the dollar for the claim. I knew that he had gotten the offer through Schelker and I knew to make a deal he would have to relay acceptance back to the person that had made the offer."

the claim for execution by clients. Carrying out these directions, Schelker first telephoned his acceptance of the offer and later confirmed it in writing, appellants, on their part, confirming their purchase by letter [4] dated March 31, 1937. On April 1, 1937, Schelker wrote Dickinson enclosing the forms of assignment and certificates to be executed, asking return of the papers by air mail so that he could get the check on Saturday, the 3rd, or on Monday. The letter concluded, "I think I neglected to state that the price is $51,472.33, which is 75% of the allowed claim of $68,629.77". Dickinson received this letter on or before April 3rd, and on that day convened a meeting of the sellers to consider the form of assignment and the mechanics of closing the transaction, and on April 3rd, wrote Schelker, "I had a conference this morning with my clients and they object [5] to signing the form you sent down but are agreeable to executing a form, copy of which is enclosed. If this is agreeable to the assignee, wire me, and I will get it taken care of. My clients desire that I either go to New York and take this and have ·their net amount remitted through a bank or sent through a bank here for their net amount". On April 4, the day after Dickinson had forwarded the revised form of assignment, he advised Schelker by letter that clients refused to go through with the deal, giving as a reason that after Dickinson had written Schelker on the day before they had received information that cash in the sum of $250 on each $1,000 was to be paid and concluding, "It was my understanding and their understanding from your telephone conversation that there was to be no cash. Our clients will not sell at the 75¢ price on the set-up as outlined."

· This appeal was brought both from the judgment dismissing Dickinson and from that in favor of the other defendants, but appellants here admit that their appeal from the Dickinson judgment was too late, and they stand upon their appeal as to the other defendants. Taking the position that the undisputed evidence establishes that Schelker was authorized by defendants to make the deal and that so authorized he did make in writing a sufficient memorandum to satisfy the statute of frauds, and further that Dickinson's letter of April 3rd was both a ratification of Schelker's act and itself an acceptance of plaintiffs' offer, they insist that the findings and judgment against them are without support, and the judgment must be reversed.

Taking up first the question of whether Schelker was authorized to, and did by the confirmation of his acceptance, effect a binding contract of sale, we find the answer to it not without difficulty. The difficulty, however, does not inhere in or rise out of any insufficiency in the memorandum, for though it does not fix a place and time of payment, the law will supply these. Neither does it inhere in or arise out of the testimony of Hyer that his acceptance was based on his understanding that no cash was to be paid creditors and was qualified by his statement to this effect to Dickinson, or out of the finding of the court that such misunderstanding on his part prevented the meeting of minds necessary to constitute a contract. For apart from the wholly unsatisfactory nature of that testimony and the circumstances which so mark it as an afterthought as to lead us to the view that the court's conclusion on it was wholly wrong, such a misunderstanding of fact as to matters of induce-

---

[4] "Enclosed please find our confirmation of purchase of your claim against the United Cigar Stores Company of America, which you state is allowed in the amount of $68,629.77.

"We are also enclosing in triplicate, Assignments of Claim forms and Resolutions authorizing officers to make such Assignments.

"The Assignments of Claim should be signed by R. L. Hyer, May Hyer, and an officer of the Davis Company, other than the Secretary; and the resolutions should be signed by the Secretary of the Davis Company. Kindly execute two copies of each for us. The third is for your own records.

"Please do not neglect notarizations

and imprint of Corporate Seal in proper space.

"Payment of $51,472.33 will be made by us against sight draft attached to properly executed Assignments of Claim presented at our office.

"We respectfully request prompt delivery and thank you for your favor."

[5] The objection made to the form of assignment was that it imposed a warranty of the ownership of the claim and an obligation to establish its validity. Dickinson advised them to make a simple assignment or quit claim, and he was instructed to draft such an instrument to be submitted by Schelker to appellants.

ment to entering into the contract could have no possible effect upon an unqualified acceptance of an unqualified offer. Neither could such a secret and uncommunicated reservation have any effect upon Schelker's authority to bind the defendants if Schelker had either the real or the apparent authority to make a binding acceptance of the offer. "Authority is an attribute of the character bestowed upon the agent by the words or acts of·his principal". Says Mechem, "What third persons are interested ·in, is, not the secret processes of the principal's mind, but the visible result of those processes—the character in which the agent is held out by the principal to those who may have occasion or opportunity to deal with him. * * * The authority of an agent in any given case, therefore, is an attribute of the character bestowed upon him in that case by the principal. Thus if the principal has by his express act, or as the logical and legal result of his words or conduct, impressed upon the agent the character of one authorized to act or speak for him in a given capacity, authority so to speak and act, follows as a necessary attribute of the character, and the principal having conferred the character will not be heard to assert * * * that he did not intend to impose so much authority or that he had given the agent express instructions not to exercise it." Mechem on Agency, 2nd Ed. Sec. 709, 710. Cf. Restatement Agency, A.L.I. Secs. 7 & 8. Such difficulty as there.is arises solely from the fact that the defendants did not deal directly with Schelker but with Schelker only through Dickinson. It is undisputed that Dickinson was their agent and authorized to bind the defendants and that he would have bound them if he instead of Schelker had signed the memorandum. It is undisputed too that Dickinson authorized Schelker to close the deal with a binding acceptance, and if the evidence establishes that defendants directed or authorized Dickinson to so authorize Schelker, they are bound. On the other hand, if the evidence establishes merely that the defendants authorized Dickinson to authorize Schelker to negotiate for, but not to make a binding contract, the judgment was right unless Dickinson's letter of the 3rd, which the evidence established he was authorized to write, constitutes an acceptance binding them. Appellees insist that whether Schelker had real or apparent authority to bind them presents a mixed question of law and fact settled in their favor by the finding of the district judge, appellants, that the evidence was without dispute and presents only a question of law to be decided in their favor. We agree with appellants. The record leaves in no doubt that the defendants were advised and knew that Schelker was acting for them in receiving and transmitting a definite and firm offer, and that after canvassing the offer, they directed Dickinson to direct Schelker to accept the offer. Whatever may have been in their minds or may have been said to Dickinson with reference to their understanding as to the status of the claim in the bankruptcy, they did not themselves communicate or direct Dickinson or Schelker to communicate to the plaintiffs any of this, but, on the contrary, directed Dickinson to direct Schelker, as their agent, to make an unqualified and binding acceptance of the offer, and thus either clothed Schelker with either real or apparent authority to bind them. Schelker did make such acceptance in full compliance with the statute of frauds and appellees thereby became bound. We are further of the opinion that Dickinson's letter of April 3rd was a complete ratification of Schelker's act and in itself constituted a binding acceptance of the offer. The judgment was wrong and must be reversed for further and not inconsistent proceedings.

HOLMES, Circuit Judge (dissenting).

The dealings between the parties to the alleged contract never passed beyond the stage of negotiations for a sale. The minds of the parties never met; they never met personally; never talked to each other over the telephone; and not a line of writing ever passed between them. The seller was in Florida, the buyer in New York. This is as close as they ever got together, either in mind or body.

Messages passed from Roth to Hyer, and a letter was addressed to Hyer in care of Schelker, but they amounted to no more than proposals and counter proposals. The agent that wrote the letter that is alleged to have bound the seller to part with his property for about two-thirds of its value was a New York lawyer, named Schelker, who was employed solely as an associate counsel to ' represent the claimant in a bankruptcy proceeding pending in a federal court in New York. He was associated in the case by a Florida lawyer by the name of Dickinson, who also was employed solely

as an attorney to prosecute the claim in the bankruptcy court.

Neither Dickinson nor his associate had any authority to sell or dispose of his client's claim. The buyer knew this, or is presumed to have known it, but it is said that the New York attorney was held out as an agent with power to sell. There is nothing in the record to prove this, and the finding below was to the contrary. A man cannot lift himself by his own boot straps; and an agent does not acquire authority by holding himself out as having it.

The appellants contend that the buyer ratified Schelker's letter of March 31, 1937. The court below found, upon undisputed evidence, that the seller never had any knowledge of this letter and did not ratify it. An appellate court cannot rightfully set aside such finding; but, if it should undertake to do so in this case, it would be met with the statute of frauds, because the written memorandum of the contract relied upon by appellants was not complete in itself, since essential matters were left open for further consideration.

It seems to be conceded that this was a Florida contract and that the Florida law governs; but how do we know it was a Florida contract when everything the appellants rely upon to complete the agreement was done in New York? The writing is silent as to the time and place of payment and delivery. The law would imply a reasonable time, but it could not imply anything as to the place when the parties were so widely separated. The buyers demanded delivery in New York, and offered to make payment there if a sight draft were drawn upon them "attached to properly executed assignment of claim duly presented at our [their] office." R. p. 95. If the contract was made in New York, and called for payment and delivery in New York, it was a New York contract.

The seller might have been led into a sale before finding out about the cash payment but for the fact that, when the time came to complete the contract, the buyer requested an assignment containing all kinds of warranties. This the seller refused to execute, but submitted a new form, which the buyer declined to accept. Pending this disagreement as to the form and substance of the assignment, the seller learned that there was to be a cash payment of $250 in addition to the securities, and refused to go any further with negotiations. This refusal was communicated to the buyer before acceptance of the new form that had been submitted.

I think the judgment appealed from should be affirmed.