Glenn B. HESTER and J. B. Fuqua,
Plaintiffs,

v.

NEW AMSTERDAM CASUALTY COM-
PANY, Keith T. Jones, Estelle J. Jones,
and Edward F. Egan, Defendants.

Civ. A. No. 8747.

United States District Court
D. South Carolina,
Florence Division.

Heard Oct. 23 and 24, 1967.

Decided June 19, 1968.

See also, D.C., 268 F.Supp. 623.

Wm. J. Cooney, Thurmond, Hester, Jolles & McElmurray, Augusta, Ga., James P. Mozingo, III, and D. Kenneth Baker, of Darlington, S. C., for plaintiffs.

P. H. McEachin, of McEachin, Townsend & Zeigler, Florence, S. C., for defendants Keith T. Jones and Estelle J. Jones.

Hugh L. Willcox, of Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for New Amsterdam Cas. Co.

HEMPHILL, District Judge.

This action charges conspiracy to defraud and fraud against the plaintiffs by the corporate defendant New Amsterdam Casualty Company and the three named defendants Keith Jones, his wife, Estelle Jones, and one Edward F. Egan. Defendant Egan is sued individually and as an agent of New Amsterdam Casualty Company, however, he resides without the jurisdiction of this court and he has not been served. The court lacks jurisdiction to render judgment against Egan individually.

Jurisdiction, as alleged in the complaint, is based on diversity and a controversy in excess of $10,000. The complaint alleges further that the plaintiffs, on or about July 31, 1964, were induced to purchase a 5,600 acre tract of land owned by the defendants Jones; the plaintiffs were lured into purchase of this land for $850,000 as a result of the fraud and conspiracy of all the named defendants.

Plaintiff alleges that groundwork for the conspiracy was begun on December 17, 1963 when New Amsterdam, through its then acknowledged agent Edward Egan, issued a guaranty bond assuring the performance by Valdosta Plywoods, Incorporated, of a timber agreement. The bond guaranteed the performance of a $960,000 timber cutting contract over a ten year period. Named as obligee under the bond were defendants Keith and Estelle Jones. New Amsterdam was the surety named on the bond. The bond was lodged with Liberty National Bank of Savannah, Geogia, to enable Keith and Estelle Jones to borrow money to buy the island on which the timber was situate, and the bank was made co-obligee under the bond as added security for the loan. The plaintiffs allege that defendants Egan and New Amsterdam, for obtaining the original bond and participation in the negotiations leading to the same, received fairly large sums of money. Plaintiffs claim that, aside from the bond, the defendants entered into a secret and covert agreement whereby defendants Jones as obligees on the bond in question signed a personal indemnification agreement by which defendant Jones promised to save harmless defendant New Amsterdam from any payments it would be required to make in case of default by Valdosta on the timber cutting contracts. This, the plaintiff alleges, rendered the bond a nullity, especially to those privy to this secret agreement.

The alleged conspiracy took form on or after June 16, 1964, when plaintiffs and defendants entered an agreement wherein plaintiffs agreed to purchase

the 5,600 acres. It is undisputed in the record that plaintiffs refused to close the contract to purchase without an assignment, to plaintiffs, of the Jones' rights under the New Amsterdam bond. They insist that defendant Egan, as agent of defendant New Amsterdam, represented that the bond was valid and in effect. The defendants Jones, it is further alleged, also represented that the bonds were valid and operative. As part of the agreement, defendants Jones promised to assign the timber lease bonds and their rights thereunder. Defendants Jones and Egan represented that defendant New Amsterdam had agreed to the assignment. Again undisputed is the fact that, during negotiations between plaintiffs and defendants, no mention of the indemnity agreement flowing from the Joneses to New Amsterdam was ever disclosed.

The complaint alleges that all of this was done in order to defraud prospective purchasers including the plaintiffs. As a result of representations made to plaintiffs by all of the defendants, plaintiffs agreed to pay $850,000 for the 5,600 acres and to give an assignment of the lease and bond. At no time, it is alleged, was the indemnity agreement disclosed to plaintiffs, nor did they have means of obtaining such information absent a disclosure by defendants. Defendant New Amsterdam, after the sale was consummated on July 31, 1964, sought to have defendants Jones refuse to deliver the bonds in question in breach of the agreement with the plaintiffs by cancelling the bond and releasing the Jones' rights thereunder. The plaintiffs therefore ask for judgment in the amount of $5,000,000 actual and punitive damages.

Defendant New Amsterdam sets up a general denial in its Answer to the allegations of conspiracy to defraud, and fraud. New Amsterdam admits the issuance of the bonds but alleges that they could be assigned only with the written consent of defendant New Amsterdam. New Amsterdam sets up as an affirmative defense that the entire amount of the yearly premium of the bond had not been paid by defendants Jones, that plaintiffs have not paid any amount on the bond, and that therefore there is a lack of consideration, and that there is a lack of privity between plaintiffs and defendant New Amsterdam.

Defendants Jones, in a joint Answer, admit the sale of the land and the use of the bond and indemnity agreement in order to procure a loan from Liberty National Bank of Savannah, Georgia. However, they deny any conspiracy to defraud, fraud, or any wrongdoing on their part. They allege further that premiums for one year had been paid through defendant Egan. They allege that they were required to sign the indemnity agreement in order to comply with New Amsterdam's terms for issuance of the bond and that they were under no duty to disclose this arrangement.

The issues were tried by the court without a jury on October 23rd and 24th, 1967, at Florence, South Carolina, and in accordance with Rule 52(a), of the Federal Rules of Civil Procedure, the court separately makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

(1) Plaintiffs are residents of the State of Georgia. The defendant New Amsterdam is a corporation, with its principal place of business in one of the states other than Georgia. Defendants Jones are residents of the State of South Carolina. Defendant Egan is a resident of the District of Columbia. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

(2) Defendant Egan has not been served in this action and is not before the court for a determination of his liability.

(3) During the late fall and early winter of 1963 the defendants Jones had an option to purchase a 5,600 acre tract of timber land in the State of Florida. On December 16, 1963, the original option expired and an extension was obtained. Under the option, Jones was to

pay $550,000 for the land. Defendant Jones sought to negotiate a loan with Liberty National Bank of Savannah, Georgia in order to purchase the property. The bank, however, was restricted in the amount it could loan on unimproved property. To circumvent this situation defendant Jones entered into a timber lease agreement with Valdosta Plywoods, Inc., a Georgia Corporation. Under the timber cutting agreement defendants Jones would have been paid $60,000 the first year and $100,000 each year for the succeeding nine years or a total of $960,000. In order to make this attractive to the bank defendants Jones sought to have the timber cutting contract bonded. Bonding of the contract was necessary primarily because Valdosta Plywoods, Inc. showed net worth of only $375,920.19, and presumably could not financially stand behind a contract of $960,000.

(4) Prior to this transaction defendant Keith Jones had done some construction and supervision of construction for the Berens Real Estate Investment Trust. During this transaction he became acquainted with Howard DeFranceaux. Mr. DeFranceaux is Executive Vice-President of F. W. Berens Insurance Service, Inc. This insurance company was engaged in accepting applications for insurance and bonds for the various companies which it represented. Defendant Keith Jones confronted Howard DeFranceaux with his problem of financing the purchase of 5,600 acres of land and the need for bonding the Valdosta timber cutting contract. Egan was also confronted with this situation as he was Vice-President of the Insurance Department of the Berens Company in charge of bonds. It is uncertain whether defendant Keith Jones had sought to have the timber cutting bonded prior to his confrontation with defendant Egan and Howard DeFranceaux but this is not important to this controversy. Defendant Egan attempted to place the bond with Aetna Insurance Company, a Connecticut corporation. Aetna was agreeable provided that the president of Valdosta Plywoods, Inc., signed an indemnification agreement, that both defendants Keith Jones and his wife, Mrs. Estelle Jones, signed specific indemnity agreements along with a letter showing that they derived substantial benefits from the bond due to the financing, and that the bond term should not exceed two years. The Peerless Insurance Company, a New Hampshire corporation, consented to a five (5) year suretyship also requiring a personal indemnification of the obligees, defendants Keith Jones and Mrs. Estelle Jones. Neither of these agreements were suitable to defendants Keith Jones and Mrs. Estelle Jones because it was necessary to have a full ten year coverage to correspond with the ten year term of the cutting contract.

(5) On December 16, 1963, Howard DeFranceaux called Carl W. Schmidt, Vice-President of defendant New Amsterdam, at the New Amsterdam offices in Baltimore, Maryland. *At all times hereinafter mentioned, Schmidt was acting in the course and scope of his employment as an officer and agent of New Amsterdam.* An appointment was made and a meeting arranged. At this time the F. W. Berens Insurance Company was not an agent for defendant New Amsterdam and had done little if any business for this company. At the meeting an agreement was entered into and a bond signed.[1] No representative of Valdosta Plywoods, Inc. was present at the meeting, nor had any application for the bond been signed by Valdosta. It was agreed that the financial condition of Valdosta was not sufficient, standing alone, to justify issuance of the bond. The annual premium on the bond was initially to be $12,000 reducible each year thereafter. As part of the agreement defendants Keith and Estelle Jones signed personal indemnification agreements to their guarantor. This fact did not appear on the face of the bond. A further

---

[1]. Between New Amsterdam as obligor and Keith and Estelle Jones as obligees.

condition of the bond required defendant Keith Jones to take out and keep in force for the ten year period an insurance policy in the amount of $500,000. While this condition was imposed by defendant New Amsterdam, this phase was turned over to F. W. Berens Insurance Company. The collection of the premium was also turned over to F. W. Berens Company; as is customary in this business. The record shows that F. W. Berens Company paid New Amsterdam the bond premium [2] and then sought to collect the yearly premium from defendant Jones. F. W. Berens Company received a fee of 30% of the total premium paid to defendant New Amsterdam. While Mr. DeFranceaux offered to sell defendant Jones the life insurance policy, defendant Jones suggested that a friend of his issue the policy, and split the fee with Mr. DeFranceaux. No policy of life insurance was ever entered into.

(6) Having secured the bond, a rider was attached making Liberty National Bank and Trust Company of Savannah a co-obligee under the bond. No officer of the principal on the bond (Valdosta) signed the bond until sometime later. A loan of $600,000 was then obtained from the Liberty National Bank and Trust Company. This allowed the purchase of the 5,600 acres. The bank was also given an assignment by defendants to Jones of the monies to be paid from Valdosta to defendants Jones by the same rider making it co-obligee under the bond. The bank had no knowledge of the indemnity agreement signed by defendants Jones.

(7) Mr. McLain Hall, a realtor from Greenville, South Carolina, made contact at Greenville with defendant Keith Jones and a Mr. Kelly, who was on an expense account from defendant Jones' business, and who had involvement in prior transactions involving the 5,600

acre tract of land. At the time Jones was interested in purchasing another tract of land. Hall later went to Myrtle Beach, South Carolina, Jones' residence, presumably to collect some bad checks issued him by defendant Jones. At this time Hall was asked if he would assist in the sale of the 5,600 acre tract of land. He assented. He was to assist a Mr. C. C. Cannady of John Hancock Insurance Company in procuring a buyer. Defendant Jones and Kelly then turned over the entire file to Hall. In the file were timber cruises, two timber leases, one to Valdosta Plywoods Company and one to Bullar Cypress [3], the bonds and riders of New Amsterdam, the Power of Attorney of New Amsterdam, given to Egan and the guarantee bonds of both timber cutting contracts. Mr. Hall and Mr. Kelly, with Jones' consent, associated Mr. R. T. Brassell in the sale of the 5,600 acre tract. The three of them presented the opportunity to buy the property to the plaintiffs. It was represented to plaintiffs by defendant Keith Jones and his agent Kelly that the bonds were in full force and effect, the premiums had been paid and that if the timber were not cut the bonding company would be liable. Nothing on the face of the transaction indicated the contrary. Subsequently plaintiffs and the two Joneses entered into a contract dated July 8, 1964 for sale of 5,600 acres with a proposed closing date of July 31, 1964. Neither at this time nor at any other time prior to the closing date was the indemnity agreement disclosed to plaintiffs.

(8) The contract for sale required that defendant Keith Jones obtain in writing the consent of defendant New Amsterdam Company to the assignment of the Jones' rights to the proceeds of the bond to the plaintiffs.[4] On January 31, 1964 defendant Egan and Howard

---

2. The record reveals a standard or usual practice in the trade for the agent to pay the premium and collect from insured (indemnitee) later.

3. Another timber cutting contract involving $300,000 was with Bullard Cypress Company.

4. The promised effect would be the substitution of plaintiffs for the Liberty National Bank, thus constituting plaintiffs obligees *in fact*, if not form.

DeFranceaux had been given powers of attorney to execute bonds and/or undertakings of suretyship on the part of defendant New Amsterdam. The powers granted specifically allowed defendant Egan and Mr. DeFranceaux "to make, execute, seal and deliver for on its (New Amsterdam's) behalf, as surety, and as its act and deed, any and all bonds or undertakings of suretyship."

(9) On July 23, 1964, defendant Jones, by letter, requested defendant Egan to obtain the written consent of defendant New Amsterdam to the assignment of the bonds in question to the plaintiffs. On July 28, 1964, Carl W. Schmidt, Vice-President of defendant New Amsterdam, in reply to a letter from defendant Egan requesting instructions, sent the following:

In answer to your letter of the 27th, it will be in order to write as follows under your signature as Attorney-in-Fact:

"The New Amsterdam Casualty Company acknowledges the Notification of Assignment from _____ to _____, dated July 18, 1964 with the understanding that it, as Surety, does not waive its rights, equities or priorities, whether by agreement, subrogation, or a common or statute law, to monies due or to become due under the contract of our principal with _____(obligee)_____ dated _____ 19__."

As you can see, I have left some of the portions blank since I am a little confused as to whether the obligee, (Mr. & Mrs. Jones) are assigning their rights to Hester and Fuqua or whether the principal, (Valdosta Plywoods, Inc.) is assigning the proceeds of bond to Hester and Fuqua. This is something which you must unravel but either way the form above is the correct one to be used.

I am interested in knowing the reasons for the assignment, and, of course, would like a copy of your letter for our file so that the bond may be properly noted.

> Yours very truly,
>
> /s/ Carl
>
> Carl W. Schmidt,
> Vice President

CWS/p

P.S.—I just noticed that we had executed a Rider on December 18, 1963 agreeing that the payments made by the principal to the obligee could be paid directly to the Liberty National Bank and Trust Company of Savannah. In view of this Rider, it will be necessary that the Bank acknowledge and consent to the assignment of this bond *before* you write the letter which I have outlined above. Make sure that you get this acknowledgment and consent from the Bank and that we are furnished a copy of this prior to writing any letter on behalf of the New Amsterdam Casualty Company.

Defendant Egan, pursuant to his instructions from defendant New Amsterdam through its Vice-President Schmidt allegedly sent the following letter to defendant Jones on July 29, 1964:

Mr. Keith T. Jones,
C/o Mr. William Mongovan,
Chipley,
Florida.

July 29, 1964.

Dear Mr. Jones,

Re: Bond 0466-0300-2434-63
Valdosta Plywoods, Inc.

I have been authorized by Mr. C. W. Schmidt to acknowledge, on behalf of the New Amsterdam Casualty Company, Notification of Assignment with the understanding that New Amsterdam as Surety does not waive its rights, equities or priorities, whether by agreement, subrogation, or a common or statute law, to monies due or to become due under the contract of our principal.

In order to properly fill out the assignment, I must have information as to whether Mr. and Mrs. Jones are assigning their rights to Hester and Fuqua or whether the principal, Valdosta Plywoods, Inc. are assigning the rights of the bond to Hester and Fuqua.

The above acknowledgement is subject to two conditions:

We must have the Liberty National Bank and Trust Company of Savannah acknowledge and consent to the assignment of this bond before we write the letter which I have outlined above. I must have this acknowledgement and consent from the bank, prior to writing any letter on behalf of the New Amsterdam Casualty Company. I must also be assured that Mr. Howard de Franceaux is participating on the life insurance being written in this matter to the extent of 50%, per our understanding with you.

Would you kindly call me if you have any questions.

Very truly yours,

Edward F. Egan
Vice President

efe:sp

———◆———

(10) On July 30, 1964 plaintiffs went to Chipley, Florida, to meet defendants Jones and close the transaction. Upon their arrival it was discovered that the consent of defendant New Amsterdam to assignment of the proceeds of the bonds had not been received and plaintiffs refused to close the deal. Defend-

ant Jones subsequently called DeFranceaux and informed him of the situation. DeFranceaux then instructed defendant Egan to send the following telegram:

New Amsterdam Casualty Co. agrees to acknowledge assignment of Valdosta Plywood Bond provided that Liberty National Bank either agrees to acknowledge such assignment or agrees to waive all rights under the bond.

Edward F. Egan
Attorney in Fact New Amsterdam
Casualty Co.

———◆———

This telegram was received on the morning of July 31, 1964.

From the credible evidence the court finds as a fact that the act of sending the telegram and signing as Attorney in Fact for New Amsterdam Casualty Company was within the actual and express scope of defendant Egan's authority given him by defendant New Amsterdam.

(11) Relying on these representations along with the telegram sent by Mr. Egan, Attorney in Fact for defendant New Amsterdam, the plaintiff concluded the transaction paying to Jones the sum of $850,000. Simultaneous with this transaction the mortgage held by Liberty National Bank of Savannah was cancelled and the bank assigned to the plaintiffs its rights under the bond.

(12) At no time prior to the closing of the transaction were the plaintiffs informed by defendants Jones or Egan, as Attorney in Fact for defendant New Amsterdam, that any premiums were due on the bond, that any defense available to defendant New Amsterdam on the bond was existing, nor were they informed that defendants Jones had signed a personal indemnification agreement agreeing to save harmless defendant New Amsterdam. Throughout, plaintiffs were led to believe the assignment to them was valid.

(13) Three months after the closing of the above transaction the following correspondence took place between the plaintiffs and defendants Jones, Egan and New Amsterdam:

October 14, 1964.

Dear Keith,

With reference to my letter of October 1st Valdosta Plywoods Inc. Bond #24363 comes up for renewal on 16th December, 1964 and the premium of $12,000 must be paid in advance.

Would you also let us know if your life insurance is in force. We would appreciate an immediate reply.

Very truly yours,

/Ed/

Edward F. Egan
Vice President

This letter was referred to plaintiff Hester who responded as follows:

October 31, 1964

Mr. Edward F. Egan
Vice President
F. W. Berens Insurance Service, Inc.
1120 Connecticut Avenue, N. W.,
Washington, D. C. 20036

Dear Mr. Egan:

Receipt is acknowledged of your letter addressed to Mr. Keith T. Jones.

The information given to us at the time of closing was that the bond was fully paid and there would be no additional premiums. I do not know whether Mr. Nichols pays for this, but we would like some explanation in view of the information given us at the time of closing.

Very truly yours,

Glenn B. Hester.

GBH:dc

November 6, 1964

Mr. Edward F. Egan
Vice President
F. W. Berens Ins. Service, Inc.
1120 Connecticut Ave., N. W.
Washington, D. C. 20036

Dear Mr. Egan:

In accordance with our telephone conversation, I would like to state that Mr. Fuqua and Mr. Hester are the new owners of the properties located in Bay, Washington, and Walton Counties in Florida which your company has previously written bonds from Valdosta Plywood, Inc., and Bullard Cyprus Company to Mr. and Mrs. Keith T. Jones. I would like to advise that Mr. Fuqua and Mr. Hester have purchased my position in total and that as of the 16th day of September, 1964, I wish you to cancel my obligations and responsibilities to you and your bonding company. You may be interested in negotiating with Mr. Fuqua and Mr. Hester to continue this bond if they so desire. I would appreciate a letter from you at your earliest convenience concerning this matter.

Sincerely,

/s/ Keith T. Jones
Keith T. Jones

KTJ/gtw

(14) To plaintiffs' surprise, they were sent letters from New Amsterdam; as were others:

November 10, 1964

Glenn B. Hester, Esquire
Thurmond, Hester, Jolles & McElmurray
Southern Finance Building
Augusta, Georgia

Dear Sir:

Your letter of October 31st addressed to Mr. Edward F. Egan has been referred to the writer. It is apparent that you do not have all of the information regarding this particular bond, and, therefore, I am writing you fully at this time.

First, the premium on this bond has not been fully paid. The Valdosta Plywoods, Inc. has paid nothing on account of the premium, although Mr. Keith Jones did make a payment in the amount of $3,750. There is, therefore, additional premium due and owing on this bond which necessarily must be paid.

When this bond was submitted to this Company, there was some question whether the bond would be written by reason of the amount involved and the financial situation which necessarily must be taken into consideration by a Surety. Therefore, Keith T. Jones and Estelle J. Jones, his wife, wrote us on December 16, 1963 agreeing to indemnify the Company against any loss by reason of the execution of the bond. On the 16th day of December, 1963, Keith T. Jones and Estelle J. Jones executed our form of Special Indemnity Agreement by which they agreed to preserve this Company harmless from any loss by reason of the execution of the bond in question. It will be noted, therefore, that Keith T. Jones and Estelle J. Jones, the obligees on the bond written by the New Amsterdam Casualty Company on behalf of the Valdosta Plywoods, Inc., were not only the obligees on the bond, but also indemnitors. The bond was, to all intents and purposes, a moral effect bond.

If this bond is assigned to any third party, even with the assent of the Surety, such third party would take the rights under the bond subject to all rights and defenses against the original obligee. In the present case, the original obligee agreed to indemnify the Surety against loss. Therefore, the assignee would be subject to such defense by the Surety. Secondly, the obligee knew that the premium on this bond had not been paid, and as obligee made payment of a portion of the premium. It is my opinion, therefore, that unless the balance of the premium is paid either by the principal, or by the obligee, that the bond will be subject to the defense of lack of consideration.

I feel that in justice we should put you in possession of these facts before we execute any assignment or assent to an assignment by Keith T. Jones and Estelle J. Jones to yourself. It is not the intention of the New Amsterdam Casualty Company to assent to any assignment in this matter unless it is fully understood that the assignee will be subject to the same rights and defenses as between the original parties.

Very truly yours,
/s/ Carl W. Schmidt
Carl W. Schmidt
Vice President

CWS/sh

CC: Mr. Edward F. Egan, Vice President
 F. W. Berens Insurance Service, Inc.

CC: Mr. Keith T. Jones

December 4, 1964

Glenn B. Hester, Esquire
Thurmond, Hester, Jolles & McElmurray
Southern Finance Building
Augusta, Georgia

RE: Bond 0466–0300–2434–63
 Valdosta Plywoods, Inc.—
 Mr. & Mrs. Keith Jones

Dear Sir:

Mr. Keith Jones has approached our agent regarding his Indemnity Agreement in connection with the bond written for Valdosta Plywoods, Inc., and running to Mr. & Mrs. Keith T. Jones. I attach hereto carbon of letter I have today written to Mr. Jones, which is self-explanatory.

While the New Amsterdam Casualty Company does not admit to any liability to anyone but the named obligee on this particular bond, I am keeping you informed in view of your apparent interest in the situation. This will give you an ample opportunity to protect your interests, not only so far as the Valdosta Plywoods, Inc. are concerned, but also Mr. Jones.

Very truly yours,

/s/ Carl W. Schmidt

Carl W. Schmidt
Vice President

CWS/sh

December 4, 1964

Mr. Keith T. Jones
Keith Jones Enterprises
831 Flatiron Building
2nd Floor—Room 14
Myrtle Beach, South Carolina

RE: Bond 0466–0300–2434–63
 Valdosta Plywoods, Inc.—
 Mr. & Mrs. Keith Jones

Dear Mr. Jones:

Your letter of November 6th regarding the bond written by the New Amsterdam Casualty Company for the Valdosta Plywood, Inc., has been handed to the writer. I have already been in communication with Mr. Hester regarding the situation, and have set-forth our position very definitely.

The bond written for the Valdosta Plywood, Inc. and running to yourself, and your wife, was written with the specific understanding that you and Mrs. Jones would indemnify the New Amsterdam Casualty Com-

pany against loss, expense and other liability by reason of the execution of the bond. This Indemnity Agreement not only guaranteed the payment of such loss and expense as might be incurred, but also provided for the payment of all premiums becoming due on the bond in question. As you are possibly aware, the premium has not been paid except for the small portion which you paid yourself on behalf of the Valdosta Plywood, Inc. As both the Valdosta Plywood, Inc., and yourself and your wife as indemnitors, are liable for this premium, it is my opinion that unless the balance of the premium is paid, that there has been a lack of consideration for the execution of the bond. In other words, neither the principal, or the obligee, which is yourself and your wife, who are also indemnitors and responsible for the premium, have paid the consideration for which the bond was written.

In view of the nature of this type of obligation, the bond was strictly limited to the named obligee, and did not provide for assignment of the rights of the obligee to any third party. Due to the fact that it was a condition that the obligee would indemnify the surety any assignment which should be permitted by the surety would necessarily provide that the new obligee would also indemnify the surety against loss and execute the usual Indemnity Agreement. It also would necessitate the new obligee assuming liability for payment of premiums. Unless, and until, the New Amsterdam Casualty Company, the surety, assents to an assignment of the rights under this particular bond, the New Amsterdam Casualty Company has no liability to anyone whatsoever, excepting Keith T. Jones and Mrs. Keith T. Jones, the obligees, who in turn have indemnified the New Amsterdam Casualty Company against loss.

There is some doubt whether Mr. Hester and Mr. Fuqua will agree to accept an assignment of your rights under this particular bond on the conditions laid down by the New Amsterdam Casualty Company. Unless, and until, such conditions are met, the New Amsterdam Casualty Company will not assent to any assignment of the rights of the obligee, and will not recognize the assignee.

In your letter you state that you have sold all of your interests in the real estate to Mr. Hester and Mr. Fuqua, and now desire to be relieved of your obligations to the surety in connection with the bond in question. There is only one way in which you and Mrs. Jones can be relieved of your liability under the Indemnity Agreement so far as this particular bond is concerned. When the liability of the New Amsterdam Casualty Company as surety on the bond is terminated, then your liability as indemnitor is terminated. As you and Mrs. Jones are the named obligees, and the rights under the bond cannot be assigned without the assent to the New Amsterdam Casualty Company, it is my opinion that you can terminate your liability by executing a full and complete release of all rights under the terms of the bond, attaching such release to the original bond, and returning it to the New Amsterdam Casualty Company. I suggest that you endorse across the bond over the portion containing the signatures the following: "For valuable consideration we hereby release and discharge the New Amsterdam Casualty Company, of, and from, any and all liability, or obligation, under the terms of the within bond. And, we do hereby agree to protect and defend the New Amsterdam Casualty Company against any

claims arising by reason of such bond, or the contract guaranteed by such bond, either of ourselves, our heirs, successors or assigns." Both you and Mrs. Jones should sign your names under this endorsement, writing the word seal in parenthesis after your name, and acknowledging the execution of the release before a notary public of the State of South Carolina.

So far as a bond on behalf of the Valdosta Plywood, Inc. is concerned running to Mr. Hester and Mr. Fuqua, the execution of such bond will depend entirely upon the present condition of the contract, the condition of the Valdosta Plywood, Inc. at this particular time, and the judgment of our underwriters. The New Amsterdam Casualty Company cannot commit itself to execution of any bond until all particulars are before it, and, of course, reserves its right to refuse execution if in its opinion the risk is not acceptable.

Very truly yours,

Carl W. Schmidt
Vice President

————◆————

The original bond was not delivered to the plaintiffs until the institution of this litigation.

(15) Subsequent to this correspondence, negotiations for settlement were begun. In the course of this negotiation, the following correspondence resulted between defendant Surety and counsel for the plaintiff.

Our people have authorized us to propose to you by way of settlement that New Amsterdam will recognize the validity of the Bond running to your clients with payment of the premium during the life of the bond, and if we can work out a settlement on this basis we would like to do so as promptly as possible so that we can be spared the necessity of further trouble and expense.

Some two weeks later, counsel for the plaintiffs replied:

Pursuant to our discussion yesterday regarding this matter, this will confirm the agreement of our clients to accept the settlement proposal of New Amsterdam to recognize the validity of the bond running to our clients, with payment of the premium during the life of the bond being conceded.

Their letter concluded:

The proposed settlement will be placed in the form of a Court Order, which I would like to discuss with you at your convenience so that we may begin preparation of same.

In the event that your client would prefer to accept any alternative, however, it might be better that we withhold discussion of a formal order until you have their reply.

Shortly after receipt of this letter, counsel for the defendant Surety answered, saying:

This will acknowledge receipt of your letter of July 22, advising us of the unfortunate situation that has developed in connection with the Valdosta Plywood Company. These developments will necessarily require that we completely reappraise this entire situation.

When New Amsterdam made the proposal that the bond be recognized as valid, it was assumed that Valdosta Plywood was carrying out the terms of their agreement.

\* \* \* \* \* \*

Your letter of July 22, seems to imply that the agreement to reinstate bond

and dismiss the suit had definitely been agreed upon and consummated. We want you to understand, however, that this was only a proposal, and in view of the changed situation, it would be necessary for us to make a complete reappraisal.

The plaintiff, following this repudiation of "the proposed settlement" filed its motion for summary judgment against New Amsterdam Casualty Company. The court held that even though the Surety, New Amsterdam Casualty, was negligent in not ascertaining the economic status of its principle prior to entering into settlement negotiations, that this negligence was not of such a character as to preclude a claim for relief especially where there is " * * * the want of equal knowledge of the material facts relating to the settlement, the want of prejudice to the plaintiffs, and the hardship of holding the Surety to the settlement offer made under an obvious mistake of fact and without knowledge that it was acknowledging immediate liability for substantial money judgment under its bond * * *." [5]

(16) The plaintiff retained title and possession of the property for a three-year period selling it in July, 1967 for $850,000, the sale being necessary to prevent plaintiff's further loss. During this three-year period the plaintiffs lost approximately $26,000 while attempting to continue logging operations in order to mitigate their own damages, and paid approximately $150,000 in interest on the money which they borrowed to purchase the land and the bond (the interest is not an element of damages in this case).

All of the plaintiffs are experienced businessmen. It is uncontested that in the resale of this realty in Florida the bargaining power the plaintiffs would have had if the bonds were in full force and effect was lost and as a direct consequence, the plaintiffs were forced to sell without the benefit of the bonds in question.

## CONCLUSIONS OF LAW

(A) The court has jurisdiction of the subject matter—the amount involved exceeds $10,000 and complete diversity of citizenship exists. The court has jurisdiction of all the parties except defendant Egan.

(B) The court finds insufficient evidence to establish conspiracy to defraud or fraud as a result of conspiracy. The credible evidence does sustain, however, a finding of fraudulent conduct on the part of defendants Jones and New Amsterdam, both through their agents and by their own acts.

The issue of fraud, separate from the issue of conspiracy to defraud and fraud pursuant to this alleged conspiracy, was not directly placed before the court as a result of the pleadings. However, under the philosophy of Rule 15(b) [6] the court treats this issue as if it had been raised by the pleadings.

The language of the statute "[w]hen issues not raised by the pleadings are tried by express or implied con-

---

5. From Judge Russell's Order of May 6, 1967—Civil Action No. 8747.

6. F.R.CIV.P. 15(b): Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. (Note: There was no objection to the evidence as being unresponsive to the pleadings.)

sent of the parties, they shall be treated in all respects as if they had been raised in the pleadings," is mandatory, not merely permissive. The rule then provides for free or delayed amendment, but states that "failure so to amend does not affect the result of the trial of these issues. Indeed, formal amendment is needed only when evidence is objected to at the trial as not within the scope of the pleadings." Securities and Exchange Commission v. Rapp, 304 F.2d 786 (2nd Cir. 1962).

 This procedure can properly be done in a nonjury matter. Carroll v. Harrison, 49 F.Supp. 283 (W.D.Va. 1943). As long as the evidence clearly presents the issue and no objection is taken, it would be an injustice to the plaintiff not to make a finding on the evidence presented. However, a determination cannot prejudice defendant in his defense on the merits. *Carroll,* supra, citing Swift and Company v. Young, 107 F.2d 170 (4th Cir. 1939). Rule 15(b) also applies to fraud when the issue as to its existence is tried by the implied consent of the parties. It is proper for the court to treat the issue of fraud as if it had been raised in the pleadings. In re Germain, 144 F.Supp. 678 (S.D.Calif.1956) citing United States v. Cushman, 9 Cir. 136 F.2d 815.

This court, under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, must apply the law that the State of South Carolina would apply. In South Carolina,

'[T]he well-established rule is that the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only.' Rauton v. Pullman Co. (1937) 183 S.C. 495, 501, 191 S.E. 416, 419: Oshiek v. Oshiek (1964), 244 S.C. 249, 252, 136 S.E.2d 303; McDaniel v. McDaniel (1963) 243 S.C. 286, 133 S.E.

2d 809; Smith v. Southern Railway 1910) 87 S.C. 136, 69 S.E. 18; Leppard v. Jordan's Truck Line (D.C.S.C. 1953), 110 F.Supp. 811. And this rule covers both the issue of liability and the measure of damages. Thus, in the Rauton case, supra, 183 S.C. at p. 502, 191 S.E. at p. 419, the Court said:

'Upon the question of whether the measure of the damages for a tort, committed in one state and sued on in another, is determinable by the law of the forum or by the law of the place where the tort was committed, the great weight of authority supports the doctrine that the *lex loci delicti* controls. The measure of damages is regarded as pertaining to the substantive, rather than to the merely remedial, rights of the injured person.'

To the same effect is Magill v. Seaboard Air Line Railway, (1909) 84 S.C. 416, 66 S.E. 561, where the Court held specifically that the right to recover punitive damages in a tort action is controlled by the law of the place where the tort occurred. Wright v. American Flyers Airline Corporations, 263 F.Supp. 865 (D.S.C.1967).

 In the case of fraudulent misrepresentation the law of the place of the wrong (lex loci delicti) controls. The place of the wrong is not where the misrepresentations were made but where the plaintiff as a result of the misrepresentation suffered a loss.[7]

██ This transaction occurred and was culminated in Chipley, Florida. The land involved was in Florida. Therefore, even though the plaintiffs are domiciled in Georgia, the place of injury is Florida. This court finds, as a matter of law, that the laws of Florida control as to right of action and the remedy or damages allowable. *Wright,* supra.

(C) The agreement between defendants Mr. and Mrs. Keith Jones and defendant New Amsterdam was in its inception a legal one. There is no evidence to show that this arrangement was in

---

7. Restatement of Conflict of Laws § 377 (1934). Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633 (2nd Cir. 1956).

and of itself illegal, as between the Joneses and New Amsterdam. The fraud arose in their failure to disclose the indemnity agreement to plaintiffs. In fact, two very reputable companies, Peerless Insurance Company and Aetna Insurance Company both agreed to the same arrangement except for the time element, but the arrangement was neither consummated nor hidden.

The validity of the arrangement continued so long as it remained a vehicle for financing the purchase of property. The consideration for the issuance of the bond as to the Joneses was the fact that the Joneses would be able to finance the purchase of the land in question, and the Liberty National Bank was co-obligee. However, when the sole obligee of the bond is also the landowner, this financial arrangement fails because on default of the principle (Valdosta in this case) the surety, New Amsterdam, must pay the obligee (defendants Jones) who, in turn, are obligated, as indemnitor, to pay the surety New Amsterdam. On the other hand, if this is a three party agreement set up in its initial form whereby Liberty National Bank is made co-obligee by way of a rider attached to the bond itself, then in the event of default on the part of Valdosta, New Amsterdam would be obligated to pay the lending institution, Liberty National Bank of Savannah, but in turn looked to its obligee-indemnitor Keith and Estelle Jones. (Neither the bank, nor plaintiffs, were informed of, or privy to, the indemnity agreement).

The evidence shows that this was the intent of the original parties. The applicable provisions of the Rider attached to the bond are as follows:

WHEREAS, New Amsterdam Casualty Company has executed a certain Lease of Timber Bond on behalf of Valdosta Plywoods, Inc. in favor of Keith T. Jones and Mrs. Keith T. Jones, his wife conditioned for the performance of a certain Timber Lease Agreement entered into between Valdosta Plywoods, Inc. and Keith T. Jones and Mrs. Keith T. Jones, his wife more specifically described in such bond,

AND WHEREAS, such bond provides that payment of SIXTY THOUSAND ($60,000.00)—DOLLARS for the first year and payment of ONE HUNDRED THOUSAND ($100,000.-00)—DOLLARS for each of the succeeding nine (9) years of such Timber Lease Agreement shall be paid to the Obligee and further provides that such bond guaranteeing the Timber Lease Agreement shall not be assignable and that no right of action shall accrue to or for the use of any person or corporation other than the named obligees,

NOW, THEREFORE, it is understood and agreed that payments to be made by Valdosta Plywoods, Inc. under the terms of the Timber Lease Agreement, or any of such payments, may be made directly to THE LIBERTY NATIONAL BANK & TRUST COMPANY OF SAVANNAH, rather than to Keith T. Jones and Mrs. Keith T. Jones, his wife, as provided in the Timber Lease Agreement and/or Bond No. 0466–0300–2434–63.

If the Rider did not make the bank a co-obligee of the bonds itself there would be no need to mention the fact that bond was not assignable. Nor would it be necessary for New Amsterdam to attach a Rider to its bond allowing payments under the bonded timber cutting contract to be payable to the bank instead of to the obligee. Further, it would be unnecessary to require the consent of the bank to an assignment of the bonds if the bank had no interest in the bonds.

The evidence shows that the obligee is made indemnitor, in most cases, only when a financing institution is made co-obligee. The court finds that this was the intent of the parties under the evidence presented in this case, at the time of the issuance of the bond.

(D) The substantive law of the State of Florida applicable to the

facts presented in this controversy states that:

[I]n the absence of a fiduciary relationship, mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry. See 14 Fla. Jur. Fraud and Deceit §§ 29 and 30, and cases cited. One exception to this rule is that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact. 14 Fla.Jur. Fraud and Deceit, § 28; Kitchen v. Long, 1914, 67 Fla. 72, 64 So. 429, L.R.A. 1917C, 617.

\* \* \* Another exception to the above rule is to the effect that even though a party to a transaction owes no duty to disclose facts within his knowledge, or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth. 14 Fla.Jur. Fraud and Deceit, § 30; Stackpole v. Hancock, 1898, 40 Fla. 362, 24 So. 914, 45 L.R.A. 814; Morris v. Ingraffia, 1944, 154 Fla. 432, 18 So.2d 1. Quoted from Ramel v. Chasebrook Construction Company, Fla.App., 135 So.2d 876, at 882 (1962).

■ Applying this law to the facts presented herein, this court finds, as a matter of law, that defendant New Amsterdam along with defendants Keith and Estelle Jones were under a duty to disclose the peculiar aspects of this particular bond agreement. There is no way the plaintiffs could ascertain the concealed fact that the obligees of bond were also the indemnitors under the special indemnity agreement entered into between defendants Jones and New Amsterdam. No incident took place in the transaction to alert plaintiffs to the possibility of hidden agreements. This agreement was peculiarly within the knowledge of the defendants and there was no way for the plaintiffs to be made aware of the existence of the special indemnity agreement. It was not attached to the bond itself nor was it brought to the attention of the lending institution. Failure on the part of defendant New Amsterdam Casualty Company through its Agent Egan to disclose the indemnity agreement constitutes fraudulent conduct. Failure to disclose the agreement by defendants Estelle and Keith Jones constitutes actionable fraudulent conduct.

There can be no doubt that the indemnity agreement was a material factor. It was not only material but crucial for the evidence clearly demonstrates that the whole transaction was bottomed on the validity of the bond in question.

■ The law of Florida requires the party alleging fraud to prove it Wilson Nat. Life Ins. Co. v. Glaaser, Fla.App., 136 So.2d 651 (1964) and it is not presumed. Therefore it must be proven by clear and convincing evidence Thomas v. Pennsylvania Threshermen & Farmers' Mutual Ins. Co., Fla.App., 167 So. 2d 10 (1964). This court finds as a matter of law that the plaintiff has sustained his burden. The evidence clearly points to the duty of the defendants to reveal the limitations of the Valdosta bond, the failure of the defendants in regard to this duty, reliance by the plaintiffs on the validity of the bond as it was represented, and their subsequent injury.

(E) The issue of the agency of the named defendant Egan must be determined by the law of Florida. As the court said in Callwood v. Virgin Islands National Bank, 221 F.2d 770, at 776 (3rd Cir. 1955):

[A]ccordingly we must follow the settled conflict of laws rule that the law of the situs of the land governs the validity of a transfer of an interest in the land, including the interpretation and validity of powers of attorney to transfer such interests.

The Florida courts have stated that:

'Authority is an attribute of the character bestowed upon the agent by the words or acts of his principal.'

Says Mechem, 'What third persons are interested in, is, not the secret processes of the principal's mind, but the visible result of those processes—the character in which the agent is held out by the principal to those who may have occasion or opportunity to deal with him. * * * The authority of an agent in any given case, therefore, is an attribute of the character bestowed upon him in that case by the principal. Thus if the principal has by his express act, or as the logical and legal result of his words or conduct, impressed upon the agent the character of one authorized to act or speak for him in a given capacity, authority so to speak and act, follows as a necessary attribute of the character, and the principal having conferred the character will not be heard to assert * * * that he did not intend to impose so much authority or that he had given the agent express instructions not to exercise it.' Mechem on Agency, 2nd Ed. Sec. 709, 710. Cf. Restatement Agency, A.L.I. Secs. 7 & 8.

Roth v. Hyer, 133 F.2d 5, at 9 (5th Cir. 1943), cert. den. 318 U.S. 782, 63 S.Ct. 859, 87 L.Ed. 1149.

■ It cannot be disputed that defendant Egan was made an agent by the power of attorney granted him and giving him the express power to make and execute bonds of suretyship. He was expressly given the authority to consent to the assignment of rights and interest under the bond by his principal, defendant New Amsterdam. Egan was further instructed to sign the consent agreement as Attorney-in-Fact for defendant New Amsterdam. This gave him apparent authority to act for and bind his principal, defendant New Amsterdam.

Therefore the acts of Egan if tortious would be imputed to defendant New Amsterdam. Under Florida law [l]iability of a principal is not dependant upon the actual authority of an agent. The principal is bound as well by the apparent authority of the agent. In Thomkin Corp. v. Miller, 1945, 156 Fla. 388, 24

So.2d 48, 49, the Supreme Court of Florida stated:

'The rule is settled in this State that a principal is bound by the acts of his agent. The authority of the agent may be real or apparent and the public may rely on either unless in the case of apparent authority the circumstances are such as to put one on inquiry. The agent's authority may be [conferred by writing, by parol, or it may be] inferred from the related facts of the case.'

See also Stuyvesant Corp. v. Stahl, Fla. 1952, 62 So.2d 18, and Van Engers v. Hickory House, Inc., Fla.App.1958, 104 So.2d 843.

'This doctrine of apparent authority extends to hold the principal liable for tortious acts of the agent as well as for contractual acts within the scope of such authority.'

'Whether or not an act or contract is within the scope of an agent's apparent authority is to be determined as a question of fact, from all the circumstances of the particular business and transaction.' 1 Fla.Jur., Agency, Section 34. Seaboard Properties, Inc. v. Bunchman, 278 F.2d 679, at 682 (5th Cir. 1960).

The court concludes as a matter of law that Egan had actual as well as apparent authority.

(F) In regards the agency of McLain, Hall and Mr. Brassell, along with that of Mr. Smith and Mr. Kelly, the law of South Carolina should control. This is distinguished from the situation of an agent who is authorized to transfer an interest in land.

In the case of Hall, Brassell, Smith and Kelly, the scope of their agency existed for the purpose of finding a buyer for the Florida property.

No South Carolina cases could be found on the conflicts question but the well settled principle found in the Restatement of Conflicts of Laws, § 343 is that the scope, creation and extent of an agent's authority depends on the place where the authority was conferred.

South Carolina courts have defined an agent as:

. [O]ne appointed by a principal as his representative and to whom the principal confides the management of some business to be transacted in the principal's name, or on his account, and who brings about or effects legal relationships between the principal and third parties. State of South Carolina v. W. T. Rawleigh Company, 172 S.C. 415, 174 S.E. 385; Thompson v. Ford Motor Co., 200 S.C. 393, 21 S.E.2d 34.

Peeples v. Orkin Exterminating Company, 244 S.C. 173, 135 S.E.2d 845 at 848 (1964).

The court, therefore, concludes, as a matter of law, that Hall, Brassell, Kelly and Smith were agents of defendants Keith and Estelle Jones and the above named agents acted within the scope and extent of their authority in their effort to procure a purchaser of the land in Florida.

(G) The court further finds that the representations made by these agents in furtherance of their efforts to procure purchasers was within the scope of their authority.

■ The South Carolina rule is that as long as there remains something to be done in the transaction, then statements of one's agent are admissible when such statements are within the scope of his authority. These statements are competent as part of the res gestae even though they relate to past events. McCready v. Atlantic Coast Line R. Co., 212 S.C. 449, 48 S.E.2d 193 (1948) citing Williams v. Western Union Telegraph Co., 138 S.C. 281, 136 S.E. 218–220.

■ The representations by these agents as to the validity of the bonds and the payment of premiums were within the scope of the agents' authority and are admissible as evidence against the defendants Jones.

(H) Mrs. Keith Jones cannot be dismissed as a party defendant. She is necessary and indispensable. She signed the indemnity agreement and was a necessary part in the resale of the Florida property. While there is no evidence of any affirmative action taken on her part, the same legal duties, in regard to disclosure, placed on her husband, would of necessity be placed likewise on her.

■ In regards to damages done to the plaintiffs as a result of the failure to disclose fully all aspects of the Valdosta bond, the law of Florida again is controlling. Florida law applies not only to actual damages but also to punitive damages. The reason for this conflicts rule is based on the philosophy that damages pertain to the substantive right as opposed to remedial rights of the injured parties. Wright v. American Flyers Airline Corporation, 263 F.Supp. 865 (D.C.S.C.1967).

■ Under the law of Florida, fraud or deceit, to be actionable, must be accompanied by some injury and resulting damages because they are moral and not legal wrongs. Therefore, without damages they are not actionable. Cape Cod Trust Company v. Wixon, Fla. App., 143 So.2d 339. However, the plaintiffs are not without remedy simply because they were fortunate enough to sell the property in question for the same amount they paid for it. While no Florida law was found, in point, the general rule is that one is not precluded from recovery simply because the subsequent sale equaled or exceeded the price paid for the property. 37 Am.Jur.2d Fraud and Deceit § 359 (1968).

■ The measure of damages in the event of fraudulent misrepresentation is the "benefit of the bargain." This is simply the difference between the actual and represented value of the property in question. Williams v. McFadden, 23 Fla. 143, 1 So. 618; West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896).[8]

Under the facts as found by this court, the property was sold by the plaintiffs

8. See also 13 A.L.R.3d 885, 903 § 3d; 57 A.L.R. 1145; 108 A.L.R. 1061; 37 C.J.S. Fraud § 143(2) (1943).

for $850,000. This was also the purchase price. The property, however, was represented by the agents of defendant Jones as being valued at between Two Million ($2,000,000) and Four Million ($4,000,000) Dollars. These representations included the value of the Valdosta bond, the Bullard Cypress Company bond, the fact that the timber on the island could be cut a second time, and the fact that it might have some development possibilities.

While principals are liable for the fraudulent and deceitful acts and representations of their agents when these acts and representations are committed within the scope of the principal's business, West Florida Land Company v. Studebaker, supra, but one who embarks in a speculative field must litigate under applicable rules, for justice will not allow one to barter for speculative goods and then rely on warranties and guarantees as if he had purchased a non-speculative commodity. All Florida Land Company v. Thomas Manor, Inc., 136 Fla. 211, 186 So. 416 (1939). Nor is one allowed to rely on a statement by the vendor or his agents which amounts to an estimation or opinion of the value, condition, character, or adaptability to certain uses of a real estate unless the vendor has resorted to some fraudulent means to prevent the purchaser from viewing and examining the property. Williams v. McFadden, supra. The evidence shows that the plaintiffs not only flew over the property in Florida but also walked over it. Since they saw the land themselves, they cannot now rely on representations as to the value of the land itself. All Florida Land Co. v. Thomas Manor, Inc., supra.

The general rule is that the represented value ordinarily is, in the case of the sale of real estate, the contract price. 37 Am.Jur.2d Fraud and Deceit § 353 (1968). Therefore, in the absence of satisfactory evidence of the represented value, in order to avoid speculation, the purchase price paid should be taken as the represented value. 13 A.L.R.3d 900 (1968).

Here, however, the court is not presented with the ordinary real estate transaction standing alone. The most significant, and to the plaintiffs the most important, aspect of this transaction was the purchase of the timber cutting contracts the performance of which was bonded by defendant New Amsterdam. There was, and could be, no speculation as to these fixed obligations. Applying the benefit of the bargain test in this case was an $850,000 tract of land plus a bonded timber cutting contract whose non speculative value was $960,000. Therefore the non speculative represented value of the property was $1,810,000. Since the plaintiff sold the land for somewhat less than the bond for $850,000, the resulting damage to the plaintiff is in an amount equal to $960,000. This is the amount, on the face of the bond, guaranteed to be paid the plaintiffs over a ten-year period.

While it would appear that the court has simply placed the parties in the same position that they would have been in had the bond, under the circumstances, been a valid one, this is certainly not the situation. It is simply the result of the application of the law and supports unswervingly the theory philosophy and equity of the benefit of the bargain test. In the minority jurisdictions which recognize the so-called "out of pocket" test the plaintiffs would be without remedy. They sold the property for the same amount as the purchase price. They consequently sustained no "out of pocket" loss. The defendants under the "out of pocket" theory would escape liability and their fraudulent conduct would go unpunished.

Law and equity demand that a wrong be remedied. By applying the "benefit of the bargain" test justice is satisfied because the plaintiffs are allowed to recover and recoup that for which they bargained. Fraudulent conduct cannot pass the bar of justice and go unpunished. The defendants in the instant case were under an absolute duty to reveal all aspects of the Valdosta bond because of its peculiar nature. Having failed in

this duty, they cannot complain when justice requires them to make good that which they represented as being valid.

While punitive damages ordinarily would flow from fraudulent conduct, the court feels that punitive damages, under the facts presented, are not warranted. Under Florida law there must be actual knowledge and intent to commit fraud or there must exist actual malice or gross and wilful conduct. Brown v. Cahill et al., Fla.App. 157 So. 2d 871 (1963). While the evidence supports a finding that the defendants failed in their duty to reveal to the plaintiffs all aspects of the Valdosta bond, the evidence does not support a finding that this conduct would support punitive damages.

"As in the case of torts generally two or more persons may be jointly liable in damages for deceit." 37 Am.Jur.2d Fraud and Deceit § 305 (1968). The court therefore finds defendant New Amsterdam Casualty Company, Keith and Estelle Jones jointly liable for the sum of $960,000.